Dow *v.* Wakefield.

Moses A. Dow & others *vs.* Thomas L. Wakefield & others.
Attorney General *vs.* City of Charlestown.

The St. of 1854, *c.* 451, provided for the imposition of tolls on two bridges belonging to the Commonwealth, between two cities, for the purpose of raising a fund to be applied to their future maintenance and repair. The St. of 1868, *c.* 322, provided in § 1 that the supreme judicial court should appoint three commissioners for the purposes in said statute named; and in §§ 2-5, that they should be sworn to the faithful and impartial discharge of their duties, and should, after due public notice and hearing of all parties in interest, proceed to award what counties, cities or towns received particular and special benefit from the maintenance of the bridges, and apportion and assess the expense of maintaining the same upon such of said counties, cities or towns, and in such manner and amount as they should deem equitable and just, and that the award, when returned into and accepted by the court, should be a final and conclusive adjudication and binding upon all parties, and the bridges should thereupon become highways. The court appointed commissioners "for the purposes named" in said statute. After the commissioners had appointed a time and place for hearing all parties and given notice accordingly, the legislature passed the St. of 1869, *c.* 272, which in terms repealed the St. of 1868, *c.* 322, §§ 2-5, and provided in §§ 1-6 that the said commissioners should cause to be made new draws in the bridges, should apply so much as might be necessary of the bridge fund to the construction of the draws, should apportion and assess, in such manner and amount as they should deem just and equitable, upon the two cities at the extremities of the bridges, the expense of maintaining and keeping in repair said bridges and draws, and should assign and divide between the cities any surplus of the fund, and, if the fund should prove insufficient, assess and apportion such deficiency upon said cities, and that upon the acceptance of this award by the court the bridges should become highways. On a bill in equity then filed by inhabitants and taxpayers of the cities to restrain the commissioners from making the new draw in one of the bridges, *Held,* 1. that the bridge fund could be lawfully employed in needful alterations of the bridge, and that of the question whether the making of a new draw was a needful alteration the legislature was the sole judge; 2. that the provision of the St. of 1869, *c.* 272, requiring the commissioners to apportion and assess the expense of maintaining the bridge on the two cities was not unconstitutional, either as limiting the judicial discretion granted to them by the St. of 1868, *c.* 322, or as imposing a disproportionate and unreasonable assessment; 3. that the St. of 1869, *c.* 272, was not unconstitutional as imposing legislative and executive functions on judicial officers; and 4. that the commissioners, having been sworn under the St. of 1868, *c.* 322, need not be sworn anew under the St. of 1869, *c.* 272.

After this decision, the commissioners made the new draw in that bridge, and were proceeding to make a new draw in the other bridge, when the legislature passed the St. of 1870, *c.* 303, which directed the said commissioners to put the bridges forthwith into good repair for travel, and in terms repealed the St. of 1869, *c.* 272, §§ 1-6, but substantially reenacted all its provisions relating to making an award apportioning in such manner and amount as they should deem just and equitable the future maintenance of the bridges, and the surplus of the fund, between the two cities, and to constituting the bridges highways upon the acceptance of the award by the court. The commissioners thereupon put the bridges into good repair for travel, and, after due notice to and hearing of the cities, returned into the court an award apportioning in equal parts between the two cities the

surplus of the fund and the future maintenance of the bridges. On objections made by one city to the acceptance of the award, *Held,* 1. that no new decree of appointment was necessary to authorize the commissioners to make it, other than the decree passed originally under the St. of 1868, *c.* 322; and 2. that the fact that there was a great disproportion between the numbers of inhabitants, areas of territory, and total valuations of property, in the two cities, did not necessarily render the award unjust or inequitable.

THE FIRST CASE was a bill in equity filed by Moses A. Dow and nine other inhabitants of Charlestown and taxpayers in both Charlestown and Boston, to restrain the commissioners appointed under the St. of 1868, *c.* 322, from constructing, under the St. of 1869, *c.* 272, a new draw in Charles River Bridge, leading from Charlestown to Boston. The case was reserved by *Ames,* J., on the bill and answer, for the determination of the full court, and is stated in the opinion.

*G. W. Warren,* (*H. W. Bragg* with him,) for the plaintiffs.

*T. L. Wakefield,* for the defendants.

AMES, J. It was the purpose of the St. of 1868, *c.* 322,* to

---

* The material parts of the St. of 1868, *c.* 322, are as follows:

SECTION 1 provides that the supreme judicial court shall appoint three commissioners "for the purposes hereinafter named."

"SECTION 2. Said commissioners shall be sworn to the faithful and impartial discharge of their duties, and shall then, after due public notice and hearing of all parties in interest, proceed to determine and award what counties, cities or towns receive particular and special benefit from the maintenance of Charles River Bridge and Warren Bridge and to apportion and assess the expense of maintaining the same upon such of said counties, cities or towns, and in such manner and amount as they shall deem equitable and just. And the said commissioners shall likewise at the same time assign or divide the moneys, funds, properties and other things now belonging to said bridges or the bridge fund to or between any of said corporations in such manner as to justly and equitably apportion the same with reference to the burden imposed.

"SECTION 3. When such award has been returned into the supreme judicial court, sitting for the county of Suffolk, and has been accepted by said court, the same shall be a final and conclusive adjudication of the matters herein referred to them, and binding upon all parties, and said court may enforce the same if necessary by proper process.

"SECTION 4. Upon the acceptance of said award by the court as aforesaid the said bridges shall become highways, and the cities of Boston and Charlestown respectively shall severally be liable for all damages arising from any want of repair in those portions thereof within their respective limits."

convert these bridges, which were the property of the Common-wealth, into public highways, and to provide that they should afterwards be maintained and kept in repair at the expense of the counties, cities and towns which receive particular and spe-cial benefit from their maintenance. On January 9, 1869, the defendants were duly appointed commissioners, in pursuance of the act and in order to carry it into effect; and have entered upon the execution of their duties. Before any award or adju-dication was had, the legislature saw fit to make a material change in the proposed system of maintaining the bridges, and to require that the entire burden of their support as highways should fall upon the two cities principally interested, namely, Boston and Charlestown. St. 1869, c. 272.* The same statute

" SECTION 5. The commissioners appointed under the first section of this act, in their estimate of the expense of maintaining said bridges, shall include the expense of opening the draws thereof and affording all necessary and proper accommodations to vessels having occasion to pass the same by day or by night."

" SECTION 8. The said commissioners shall have power to sell and dispose of a certain triangular piece of land belonging to the Commonwealth, situated at the Boston end of the Warren Bridge," " containing about twenty thousand square feet, and to add the proceeds of the same to the fund for said bridges."

* The material parts of St. 1869, c. 272, are as follows:

SECTION 1 provides that the commissioners appointed under the St. of 1868, c. 322, § 1, " shall forthwith cause to be made, in lieu of the existing draws in Charles River and Warren Bridges, a draw in each bridge with a clear open-ing of forty-four feet in width, in such position and of such form and con-struction as the harbor commissioners shall determine."

" SECTION 2. Said commissioners are hereby authorized and directed to apply to the construction of said draws so much as may be necessary of the un-expended balance of the Charles River and Warren Bridges fund, and the same is hereby appropriated for that purpose; provided, that until the com-pletion of said draws, said commissioners shall have the sole charge and man-agement of said bridges and draws, and may apply such portions of said fund as may be necessary to keep the same in repair.

" SECTION 3. Said commissioners, after due notice and hearing, shall, in such manner and amount as they shall deem just and equitable, apportion and assess upon the cities of Boston and Charlestown the expense of maintaining and keeping in repair said bridges and draws, and shall also at the same time in like manner assign and divide to and between said cities any surplus of said

also imposes upon the commissioners the additional duty of constructing a new draw in each bridge, and authorizes them to use the bridge fund for that purpose. The plaintiffs, who are taxpayers in the city of Charlestown, insist that in passing this latter statute the legislature has exceeded its authority, and that the statute for that reason is unconstitutional and of no validity. They therefore apply to this court to restrain the commissioners, by writ of injunction, from any attempt to carry it into effect.

The first, and apparently the principal, objection is, that it conflicts with the constitutional rule that no state shall pass any law impairing the obligation of contracts, inasmuch as it contemplates (in the view of the plaintiffs) a diversion of the fund created under St. 1854, *c.* 451, from its legitimate uses as prescribed by that statute.* The bill insists that the draws already

---

fund remaining unexpended after said draws shall have been widened as above provided, and all other funds and property now belonging to said bridges; and if said fund shall prove insufficient to pay the expense of widening said draws, they shall in like manner assess and apportion such deficiency upon said cities.

" SECTION 4. Said commissioners shall return their award into the supreme judicial court, sitting for the county of Suffolk, and when said award shall have been accepted by said court, the same shall be a final and conclusive adjudication of all matters herein referred to said commissioners, and shall be binding upon all parties; and said court may enforce the same by proper process.

" SECTION 5. Upon the acceptance of said award by the court as aforesaid, the said bridges shall become highways, and thereafter said bridges and draws shall be managed, maintained and kept in repair by the cities of Boston and Charlestown according to the terms and proportions established by said award.

" SECTION 6. The commissioners designated in the first section of this act, in apportioning the expense of maintaining said bridges and draws, shall include the expense of opening the draws thereof and affording all necessary and proper accommodations to vessels having occasion to pass the same by day or by night."

SECTION 9 repealed the St. of 1868, *c.* 322, §§ 2–9.

* The 1st section of St. of 1854, *c.* 451, passed April 29, enacts that "for the purpose of raising a fund for the rebuilding of the Charles River Bridge, and the repairing of the Warren Bridge, and for the further purpose of raising a fund sufficient to repair and keep in repair said bridges as free public avenues, there shall be, from and after the first day of June next, levied and collected upon the said bridges" a certain "rate of toll." "And said tolls

existing are good and sufficient, and have always answered the purpose for which they were intended, and that the proposed expenditure is "in no way for the maintenance or repair of the bridges, but for a material alteration in their structure." Whether the statute can be said to amount to, or to have created, a contract with anybody, is a question which under the circumstances does not call for a decision. We have already had occasion to say that the statute under which these defendants were acting must be considered as a formal declaration by the legislature, acting in behalf of the Commonwealth, that the former provision for the passage of vessels through the bridges was insufficient, and that the public convenience required the proposed enlargement. *Middlesex Railroad Co.* v. *Wakefield, ante,* 261, 266. It is for the legislature alone to say what kind of bridge is best suited to the various and to some extent conflicting wants of the public, and what shall be the dimensions and general description of the draws in order to provide for the exigencies and increase of navigation upon the river. The statute for the creation of the fund does not confine its application to the mere and literal repairs of the existing bridges, or in case of their decay or accidental destruction to the rebuilding of others upon exactly the same model. It is no diversion of the fund from its appointed uses, to employ it in all such needful repairs, and also in all such needful alterations and improvements in structure as the public exigencies from time to time may require. And of the reality and extent of those exigencies the legislature is the final and only judge.

Another objection relied upon by the plaintiffs is, that the new

shall be levied upon said bridges until a sum shall be collected thereby sufficient to rebuild said Charles River Bridge, to repair the Warren Bridge, and to leave in the treasury of the Commonwealth a fund of one hundred thousand dollars, which fund, with all accumulations thereof, shall be applied to the future maintenance and repair of said bridges."

The 6th section is as follows : "When the fund aforesaid shall have accumulated to the amount of one hundred thousand dollars more than is needed for the rebuilding of the Charles River Bridge, and the repairing of the Warren Bridge, the treasurer of the Commonwealth shall give notice thereof to the governor, who thereupon shall publicly declare said bridges free from toll."

statute is an interference with a judicial proceeding, compelling the commissioners, before whom it is pending, to adjudicate and award in a manner which may be contrary to their own judgment, as to the corporations that should be required to assume the burden of the support of the bridges; and also that the proposed assessment of that burden on Boston and Charlestown alone is "disproportionate and unreasonable;" and that for these reasons also the act is unconstitutional and of no validity. We think, however, that there is no foundation for either of these objections. The St. of 1868, *c.* 322, like any other statute, was subject to be repealed or modified at the pleasure of the legislature. It makes no difference that the commissioners had appointed a time and place for hearing all parties supposed to be interested, and had given notice accordingly. No rights had been acquired under it, or will be lost or impaired by its repeal. Its operation did not depend upon the acceptance of any city or town, and it had none of the characteristics or elements of a contract. If the legislature had power to authorize commissioners to select the corporations that should maintain the proposed new highways, it has the power to make the selection for itself. The attempt to apportion that burden according to the special and peculiar advantages derived by various towns, cities and counties, respectively, from the use of the bridges, can never be more than partially successful. Under any apportionment, much the greater part of that burden would fall as a matter of course upon these two cities. If the legislature decided that they, according to the general rule in the case of highways, might reasonably be charged with. the whole cost of the future maintenance of the bridges, it is impossible for us to say that their decision was unconstitutional. Its expediency was for them to consider, and not for us.

The plaintiffs take the further objection that the statute imposes executive and legislative duties upon judicial officers. But the defendants, whose appointment proceeds from, and whose award is to be reported to this court, are not in our judgment judicial officers in the strict constitutional sense of the word. They more nearly resemble masters in chancery, assess

ors, auditors and other officers whose functions are partly minis-
terial and partly judicial. *New London & Northern Railroad
Co.* v. *Boston & Albany Railroad Co.* 102 Mass. 386. It is noth-
ing new that officers of the court, who are expected to report to
it, should also be charged with ministerial functions. Such is
the case with commissioners to set out dower, or to make par-
tition of real estate. Commissioners appointed by the court in
proceedings for the reclaiming of meadows are authorized by
statute to erect dams and dikes, and to remove obstructions
from watercourses. Gen. Sts. *c.* 148, §§ 4, 5. In questions as
to the use of water power, commissioners are sometimes ap-
pointed by the court to make measurements, to erect monu-
ments and set up limits. Masters in chancery, and other offi-
cers, are frequently required to make sales of property, or to
superintend experiments, sometimes of a costly description.
Under the original statute, against which we do not understand
these plaintiffs to make any objection, these commissioners were
required to make sale of a lot of land belonging to the Com-
monwealth, and to add the proceeds of the sale to the bridge
fund. So long as the ministerial acts required are necessarily
incident or practically appropriate or auxiliary to the general
trust and duty of a commissioner or other officer appointed by
the court, we do not understand the constitutional objection to
be applicable. In this case, the bridge fund is to be apportioned
by these commissioners among the two cities, and it is certainly
reasonable that the expenditures to be charged against that fund
should be under their superintendence. At any rate, there is no
conflict or incompatibility in the various duties imposed upon
them. It is to be remembered that the bridges are themselves
the property of the Commonwealth, that the fund is also its
property, and that the proposed expenditure is one which it has
a perfect right to make. It has the right to select its own
agents to superintend that expenditure. The fact that those
agents as officers of the court have already been intrusted with
the duty of making an investigation, and are to report to the
court, in reference to the same general subject, in another aspect,
does not disqualify them from performing this additional duty

We decide therefore that upon this point also the plaintiffs' objection cannot be maintained.

The views above expressed dispose also of the remaining objection, namely, that the commissioners were not duly sworn. The modification of their powers and duties after they were sworn under their original appointment did not render it necessary that they should be sworn anew.      *Bill dismissed.*

After this decision, the commissioners proceeded with and completed the making of a new draw in the Charles River Bridge, and had procured plans and specifications for a new draw in the Warren Bridge, (all in conformity with the St. of 1869, *c.* 272,) when on June 1, 1870, the St. of 1870, *c.* 303, was passed, the substance of which, so far as material to this report, is printed in the margin.*

---

\* SECTION 1 provided that the commissioners appointed under the St. of 1868, *c.* 322, § 1, should forthwith cause the two bridges to be put in good repair for public travel.

SECTION 2 appropriated so much as might be necessary of the unexpended balance of the bridges' fund for that purpose, and directed the commissioners to apply it accordingly.

SECTION 3 was as follows: " Said commissioners, after due notice and hearing, shall, in such manner and amount as they shall deem just and equitable, apportion and assess upon the cities of Boston and Charlestown the expense of maintaining and keeping in repair said bridges and draws, including the expense of opening and closing the draws thereof, and affording all necessary and proper accommodations to vessels having occasion to pass the same by day or night; and shall also at the same time and in like manner, assign and divide to and between said cities, any surplus of said fund remaining after said repairs shall have been completed as in this act provided, and all other funds and property now belonging to said bridges; and if said fund shall prove insufficient to pay the expense of said repairs and the care and management of said bridges and draws, they shall in like manner assess and apportion such deficiency upon said cities."

SECTION 4 directed the commissioners to complete the repairs on or before October 1, 1870, and to return their award into this court at the October term 1870 for Suffolk, " and when said award shall have been accepted by said court the same shall be a final and conclusive adjudication of all matters herein referred to said commissioners and shall be binding upon all parties, and said court may enforce the same by proper process."

The commissioners thereupon put the two bridges into good repair for public travel; and then, after due notice to and hearing of the cities of Boston and Charlestown, which appeared by their solicitors, they returned into this court at October term 1870 for Suffolk an award, by which it appeared that there remained unexpended of the bridges' fund on October 1, 1870, $14,575.09; and which, after reciting all their proceedings from the time of their original appointment under the St. of 1868, *c.* 322, ended as follows : " They do now find, adjudge, award and report, and this is their final adjudging, finding and award : namely, in accordance with the provisions of the statutes under which they act, they apportion and assess upon the cities of Boston and Charlestown the expense of maintaining and keeping in repair said Charles River and Warren Bridges and the draws therein, including the expense of opening and closing the draws thereof, and of affording all necessary and proper accommodation to vessels having occasion to pass the same by day or night, in the proportion of one half part thereof to and upon each of said cities. And they further assign and divide between said cities of Boston and Charlestown the surplus of said Charles River and Warren Bridges' fund, after the payment of all the expenditures authorized by the commissioners and by said acts, and all other funds and property now belonging to said bridges, in the proportions aforesaid." The decree of January 9, 1869, appointing the commissioners, was appended to the award, and the material parts of it are printed in the margin.*

SECTION 5 provided that " upon the acceptance of said award by the court as aforesaid the said bridges shall become highways, and thereafter said bridges and draws shall be managed, maintained and kept in repair by the cities of Boston and Charlestown, according to the terms and proportions established by said award."

SECTION 7 repealed the St. of 1869, §§ 1–6, and " all other acts and parts of acts inconsistent herewith."

* " This cause having been fully heard and considered, this court, sitting as a full court in said county of Suffolk, doth order and decree that Thomas L. Wakefield, Edward S. Philbrick and William T. Davis, be and they hereby are appointed commissioners, for the purposes named in an act of the General Court of the year one thousand eight hundred and sixty-eight, entitled 'An act

Upon the return of the award, the attorney general moved for its acceptance by the court; and the city of Charlestown filed the following objections to such acceptance : " 1. Because the commissioners in this investigation and inquiry have acted under the decree of the court appended to the award, which directed them to proceed according to the manner and form pointed out in § 2 of *c.* 322 of the St. of 1868, which section was repealed by § 9 of *c.* 272 of the St. of 1869, and these commissioners acted as officers of this court without obtaining a a new decree according to the law in force at the time of the hearing. 2. Because the award does not appear to be based upon any of the facts which the decree requires the commissioners to find, nor does it appear that they found any such facts. 3. Because the commissioners have made an arbitrary division of the burden, contrary to a fair and reasonable construction of the Sts. of 1869, *c.* 272, § 3, and 1870, *c.* 303, § 3. 4. Because the award is neither just nor equitable, and this court has the power, on the application of an aggrieved party, at the hearing on the acceptance of the award, to examine into the grounds and merits of the same, and to direct, by recommitment or otherwise, such modifications thereof as to it may seem just and equitable." The case, on this motion and these objections, was reserved by *Wells,* J., for the determination of the full court, and argued in April 1871.

---

relating to Charles River Bridge and Warren Bridge,' being the three hundred and twenty-second chapter of the acts of that year; and directed, after having ɔeen sworn to the faithful and impartial discharge of their duties, and after due public notice and hearing of all parties in interest, to proceed to determine and award what counties, cities or towns receive particular and special benefit from the maintenance of Charles River Bridge and Warren Bridge, and to apportion and assess the expense of maintaining the same upon such of said counties, cities or towns, and in such manner and amount as they shall deem equitable and just; and at the same time to assign or divide the moneys, funds, properties and other things now belonging to said bridges or the bridge fund, to or between any of said corporations, in such manner as justly and equitably to apportion the same with reference to the burden imposed upon said corporations;" "and to return into this court their award upon and concerning all the matters and things hereinbefore referred to."

*J. C. Davis*, Assistant Attorney General, for the Attorney General.

*G. W. Warren & H. W. Bragg*, for the city of Charlestown. 1. It was the duty of the commissioners, before proceeding to hear the two cities, to obtain through the attorney general a new decree following the statute then in force. Failing to do this, they acted without jurisdiction.

2. They do not, as they should have done, state the facts and reasons on which they base the award. They were charged with the duty of making an investigation, and were, in the language of the opinion in *Dow* v. *Wakefield*, " to report to the court," — not merely to return into court a naked award.

3. The intention of the various statutes was, that the commissioners should make a just and equitable apportionment, having regard to the relative abilities of the two cities; not that they should make an equal and arbitrary division of the burden. This the legislature might itself as well have done, by the statute; had it been deemed just or equitable. But it clearly was not deemed so by the legislature, and therefore a judicial inquiry was directed into the due proportions of the burden.

4. The division is in fact not just, nor equitable. The burden is apportioned equally between the cities; while public and official statistics show that Charlestown has but one eighth of the population, one nineteenth of the territory, and one twenty-first of the property valuation, of Boston, and indicate that this disproportion will increase in the future.

By the Court. 1. The purpose and effect of the St. of 1869, *c.* 272, was to modify, and in some respects to limit, the duties of the commissioners who had been appointed under the St. of 1868, *c.* 322, but did not require a new decree of appointment.

2. It does not appear that the award is unjust or inequitable.

*Award accepted.*