## OPINION OF THE JUSTICES TO THE SENATE.

Assuming that no rights have accrued upon the faith of the final decree of this court entered in accordance with the rescript following the decision reported in *Mayor & Aldermen of Springfield, petitioners, ante,* 578, a statute, providing in substance that the cost of the bridge across the Connecticut River between Springfield and West Springfield, authorized by St. 1915, c. 252, shall be paid in the proportions of thirty-one per cent by the county of Hampden, fifty-five per cent by the city of Springfield, thirteen per cent by the town of West Springfield and one per cent by the town of Agawam, instead of in the proportions fixed by the final decree above referred to, which adopted the findings contained in the report of commissioners appointed under the provisions of St. 1915, c. 252, and directed that such payment should be made, thirty-one per cent by the county of Hampden, fifty-one per cent by the city of Springfield, twelve per cent by the town of West Springfield, three per cent by the city of Holyoke, two per cent by the town of Westfield and one per cent by the town of Agawam, would be violative of no provision either of the Constitution of this Commonwealth or of that of the United States.

A provision, in such a statute, that "so much of the decision of the commissioners appointed under" St. 1915, c. 252, "and of the decree of the court confirming the same as are inconsistent herewith are hereby superseded," would be unconstitutional as an attempt of the Legislature to exercise judicial powers in violation of art. 30 of the Declaration of Rights.

THE following order was passed by the Senate on May 26, 1920, and was transmitted to the Justices of the Supreme Judicial Court on May 27, 1920.

WHEREAS, there is pending in the Senate a bill entitled "An Act to provide for the Equitable Distribution of the cost of a Bridge across the Connecticut River between Springfield and West Springfield," known as Senate Bill No. 534; and

WHEREAS, grave doubt exists as to the constitutionality of said bill, if enacted into law; therefore be it

ORDERED, that the Senate require the opinion of the Honorable Justices of the Supreme Judicial Court upon the following important questions of law: —

1. Would the enactment of said bill violate the constitutional rights of any person?

2. Would such enactment violate any constitutional right of any political subdivision of the Commonwealth affected thereby?

3. Would the said bill, if enacted into law, be constitutional?

Senate Bill No. 534, referred to above, read as follows:

An Act to provide for an Equitable Distribution of the cost of a
     Bridge across the Connecticut River between Springfield
     and West Springfield.

Be it enacted by the Senate and House of Representatives in General Court assembled, and by the authority of the same, as follows:

SECTION 1. The cost of the bridge provided for by chapter two hundred and fifty-two of the General Acts of the year nineteen hundred and fifteen, and of that part of its approaches designated "viaduct" on the plan of said bridge heretofore accepted by the county commissioners of the county of Hampden under the authority of said chapter two hundred and fifty-two, and of the "expenses" referred to in section four of said chapter two hundred and fifty-two, and of the cost of the depression of the railroad tracks, and of one main approach in Springfield and West Spring-

field, respectively; and of maintaining and keeping said bridge and said approaches in repair shall be paid by the county of Hampden, the city of Springfield, the towns of West Springfield and of Agawam in the following proportions, to wit: — thirty-one per cent by the county of Hampden, fifty-five per cent by the city of Springfield, thirteen per cent by the town of West Springfield, and one per cent by the town of Agawam.

SECTION 2. The said county commissioners may grant to any street railway company or companies the privilege of running their cars over said bridge, and may also grant privileges to other public utilities, all upon such terms, conditions and restrictions, and for such compensation as in their judgment public interest and convenience may require. The revenue from all such privileges shall be paid to the county treasurer and apportioned and paid by him to the said county and to the city of Springfield and to the towns of West Springfield and Agawam in such proportions as they severally pay toward the cost of maintaining and keeping said bridge in repair.

SECTION 3. So much of said chapter two hundred and fifty-two as is inconsistent herewith is hereby repealed, and so much of the decision of the commissioners appointed under said act and of the decree of the court confirming the same as are inconsistent herewith are hereby superseded.

SECTION 4. This act shall take effect upon its passage.

On June 3, 1920, the Justices returned the following answer:

To the Honorable the Senate of the Commonwealth of Massachusetts:

We, the undersigned Justices of the Supreme Judicial Court, having considered the question on which our opinion is requested under the order of May 26, 1920, a copy whereof is hereto annexed, respectfully submit this answer:

The order relates to the constitutionality of Senate Bill No. 534, entitled "An Act to provide for an Equitable Distribution of the Cost of a Bridge across the Connecticut River between Springfield and West Springfield." The proposed bill provides in substance in § 1 that thirty-one per cent of the cost of the bridge authorized by St. 1915, c. 252, shall be paid by the county

of Hampden, fifty-five per cent by the city of Springfield, thirteen per cent by the town of West Springfield, and one per cent by the town of Agawam. By § 2 authority is conferred upon the county commissioners of Hampden County to grant locations over the bridge to street railway companies and privileges to other public utilities. This section involves no constitutional question and need not be discussed further. By § 3 so much of c. 252 as is inconsistent with the proposed act is repealed, and so much of the report of the commissioners appointed under that act and of the confirmatory decree of the court as are inconsistent with the proposed bill "are hereby superseded."

The location, plans and specifications of the bridge authorized by c. 252 were to be determined by a board of commissioners appointed by the Supreme Judicial Court. These commissioners were required by § 4 to "determine what cities and towns in the county of Hampden are or will be specially benefited by the erection of the bridge, and what proportional part of the cost of the bridge . . . shall be paid by said county and by such cities and towns respectively." Pursuant to that act commissioners were appointed and their report has been filed, giving among other matters the location and detailed plans and specifications of the bridge. Their finding to the effect that the city of Holyoke would be specially benefited by the construction of the bridge was assailed on numerous grounds by the representatives of that city. All objections were overruled by a single justice, whose decision was affirmed by the full court. *Mayor & Aldermen of Springfield, petitioners, ante,* 578. Subsequently a final decree was entered after rescript confirming the report of the commissioners. That report contained further findings to the effect that the towns of Westfield and Agawam, as well as the town of West Springfield and the city of Springfield would receive special benefit from the construction of the bridge. The apportionment of the cost of the bridge according to that report was as follows: thirty-one per cent upon the county of Hampden, fifty-one per cent upon the city of Springfield, twelve per cent upon the town of West Springfield, three per cent upon the city of Holyoke, two per cent upon the town of Westfield, and one per cent upon the town of Agawam. The practical effect of the proposed bill, if enacted into law, would be to relieve the town of

Westfield of the two per cent and the city of Holyoke of the three per cent of the cost assessed upon them respectively by the report of the commissioners confirmed by the court, and to impose an additional one per cent upon the town of West Springfield and an additional four per cent upon the city of Springfield, leaving unchanged the percentages assessed upon the county of Hampden and the town of Agawam.

Numerous statutes have been enacted from time to time providing for the construction and maintenance of bridges and public improvements of like nature. The means adopted for apportioning the cost and expense of maintenance have varied widely. In some they have been determined directly by the Legislature and in others by commissioners appointed by the Governor, by existing public boards or commissions and by commissioners appointed by the court. See *Kingman, petitioner*, 153 Mass. 566, 573–577. Some of these statutes have been attacked as a delegation of legislative power to the courts and thus violative of the Constitution. The principle of such legislation has been upheld generally on the ground that the decision of the questions presented required the exercise of the judicial faculty. It always has been recognized, however, that such powers and duties, which in their last analysis concern the distribution of the burdens of taxation, are not judicial in the strict constitutional sense but partake of the legislative and administrative as well as of the judicial character. *New London Northern Railroad* v. *Boston & Albany Railroad*, 102 Mass. 386, 387. *Dow* v. *Wakefield*, 103 Mass. 267, 272, 273. A determination respecting the construction and apportionment of the expense of a bridge (when built by public authority and at public cost), however expressed, is in essence a regulation by the sovereign power concerning a highway. It establishes no contractual relation. It does not confer a property right in the private and constitutional sense. Being simply a regulation by government, it is subject to modification and change by the Legislature. One of the well recognized purposes for which legislative power may be exercised under the general welfare clause of the Constitution, c. 1, § 1, art. 4, is a wise and careful distribution of the public burdens arising out of the construction and maintenance of roads and bridges. Ordinarily it would not be questioned that the Legislature may enact general

or special laws for the construction of bridges and for the division among counties, cities and towns of the cost of building and maintaining them. *Boston, petitioner,* 221 Mass. 468.

If the apportionment of the expense of the Springfield bridge had been made in the original enactment of c. 252, in precisely the same terms contained in the report of the commissioners, it hardly would be contended that the General Court thereby had exhausted its capacity touching the subject and was shorn of authority to change that apportionment.

The power of the Legislature to shift the burden of the expense of the bridge as established by the commissioners and affirmed by decree of the court, we think, follows from the force of several decisions. It was provided by St. 1862, c. 177, that commissioners should be appointed by the Supreme Judicial Court to determine what towns in the counties of Norfolk and Plymouth were benefited by the laying out as a public highway of the turnpike and bridges of a private company. Such a commission determined that seven towns were so benefited and apportioned the expense among them. By St. 1870, c. 265, it was provided that the Governor with the consent of the Council should appoint . commissioners to determine what towns and cities in the counties of Suffolk, Norfolk and Plymouth were benefited and to make apportionment of the expense arising from the laying out of the same highway. The report of this commission included only three of the seven towns first found as benefited and made apportionment accordingly. It was contended in *Scituate* v. *Weymouth,* 108 Mass. 128, that the later statute was unconstitutional, but it was held that the earlier statute was "an exercise of the authority of the Legislature to distribute public burdens and duties. It is clear that, under the same constitutional power, it had the right to change the law and redistribute these public burdens, if from a change of circumstances or other reasons it deemed it just and proper so to do."

Pursuant to the terms of St. 1873, c. 200, commissioners were appointed by the Supreme Judicial Court to determine what cities and towns in Hampden County were specially benefited by a bridge over the Connecticut River between Springfield and Agawam and what proportions of the cost and expenses of its construction and maintenance should be paid by such cities and

towns, all the costs being paid in the first instance by the county of Hampden. Springfield and Agawam were determined to be specially benefited and the cost and expenses were apportioned between them by the report of the commissioners confirmed by the court. By St. 1880, c. 236, the same court was authorized to appoint commissioners to determine the amount of special benefits received by these municipalities by the bridge and if such benefits did not equal the cost of the bridge to determine the amount that each had paid in excess of the benefit and to order the county of Hampden to pay to the city and town the amount which each had paid or become liable for in excess of the benefit received by it. It was held that the later statute was constitutional in *Agawam* v. *County of Hampden*, 130 Mass. 528, the court saying at page 538:

"The judgment, so far as regarded the payment of the original cost of the bridge, was necessarily in the form of a judgment that the county of Hampden should recover against the town of Agawam and the city of Springfield respectively certain sums of money. But the Legislature is no more precluded thereby from afterwards requiring the county to reimburse to that town and that city a portion of that cost, than if the amounts so paid by them in the first instance had been ascertained by agreement of the parties, or fixed by the Legislature in the statute itself. A subsequent statute transferring to the county the burden of the future maintenance of the bridge, notwithstanding that judgment, would be constitutional, within the decision in *Scituate* v. *Weymouth*, before cited. As to the cost of the original construction, that judgment only determined by what cities and towns, and in what proportions, it should be paid in the first instance. There is nothing in the judgment, nor in the statute under which it was rendered, to limit the power of the Legislature to enact that the Commonwealth or the county shall raise and appropriate money for the payment of expenses incurred, whether in the past or in the future, for the public benefit." In *Kingman, petitioner*, 170 Mass. 111, where the court had under review an apportionment made by its commissioners of the costs and expenses of the Neponset River Valley Sewerage System which was attacked as unjust and inequitable, it was said, at page 119: "The Legislature, at least, has power to change the proportion which each

municipality shall pay, and to provide by new legislation for a new scheme for the distribution of the burden." Concerning bridges by which railroads span highways under the grade crossing abolition act, it was said in *In re Petition of Mayor & Aldermen of Northampton*, 158 Mass. 299, at page 302: "As the whole subject of the crossing of highways by railroads can from time to time be regulated by the Legislature, the Legislature can, even after a final decree has been rendered, make other provisions, and require the crossings to be constructed in a manner different from that established by the decree."

Although the facts respecting the proposed bill are not exactly the same as in any of these decisions, they do not seem to us sufficiently divergent to make any difference with the controlling constitutional principles.

The Legislature by the enactment of St. 1915, c. 252, did not thereby set a bound to the exercise of its power whenever in its wisdom the public interests require that it be put forth.

The municipal subdivisions of the Commonwealth, such as counties, towns, cities and districts, have not the same rights to judicial trial and determination touching the obligations imposed upon them for the support of strictly public burdens as have other corporations and persons. They are public and political organizations as distinguished from private corporations. It is too clearly settled to require the citation of numerous authorities that private property cannot be taken directly or indirectly for public uses by mere fiat of the Legislature. *Minnesota Rate Cases*, 230 U. S. 352, 433–435, 469, 472. This principle applies to the property of municipalities not of a public or governmental nature but held privately or by grant for a special use. *Mount Hope Cemetery* v. *Boston*, 158 Mass. 509. *Worcester* v. *Worcester Consolidated Street Railway*, 196 U. S. 539, 551. But the property of a city or town which it has acquired as an agency of the State, and which it holds for public uses and not for its private purposes, is subject to a large measure of legislative control. Whatever rights the municipalities concerned had under the report of the commissioners and the decree of the court were of a public nature and subject to the control of the legislature. *Higginson* v. *Treasurer & School House Commissioners of Boston*, 212 Mass. 583. *Boston, petitioner, supra.* Cases like *Gast Realty & Investment Co.* v. *Schneider*

*Granite Co.* 240 U. S. 55, and *Myles Salt Co. Ltd.* v. *Iberia & St. Mary Drainage District,* 239 U. S. 478, are not governing under these circumstances because they relate to the rights of private persons and corporations against a direct assessment for alleged betterments.

Doubtless there may be instances where the imposition of a general tax upon a particular political subdivision would transcend the constitutional power of the Legislature. These may arise from attempts to levy taxes for other than public purposes or from efforts to make one community pay for a public enterprise not rationally susceptible of conferring any benefit upon it, and perhaps from other causes. It may be presumed that an attempt to make Brookline or Orleans pay for the Springfield bridge would be an abuse of legislative power. *Norwich* v. *County Commissioners,* 13 Pick. 60, 62. *Duffy* v. *Treasurer & Receiver General,* 234 Mass. 42, 51. In such instances the assumption may be indulged that the individual taxpayer might invoke the protection of the Constitution against an invasion of his property rights. The proposed bill falls short of that point. It may be difficult to understand the basis for " equitable distribution" which the proposed bill on its face asserts that it is designed to accomplish. All questions as to its justice or expediency are for the Legislature and not for the court.

It is not essential that the burdens of taxation should be imposed upon cities and towns in proportion to the benefits received by each from the expenditure of the money raised, although this rule often has been prescribed and followed. Assessments of the cost and maintenance of bridges and other public improvements have been laid with regard to other considerations. Such expenses have been apportioned not only "with reference to all the circumstances of benefit to the respective municipalities affected" but also with reference "to their population, extent, and ability to bear the burden." *Commonwealth* v. *Newburyport,* 103 Mass. 129, 134. *Boston, petitioner, supra.* The expenses of the Metropolitan sewer system and of the metropolitan park system have been apportioned according to the valuation of the several municipalities and according to percentages derived from combinations of valuation and population and upon other bases. *In re Metropolitan Park Commissioners,* 209 Mass. 381, and cases there

collected. Even in the apportionment of special assessments upon privately owned land for the expenses of local improvements which must be proportional and ordinarily not in substantial excess of the benefits, *White* v. *Gove,* 183 Mass. 333, numerous and different methods have been upheld, as for example, assessments according to frontage, to area, to valuation either with or without buildings, or to a combination of one or more of these with others have been upheld. See *Sayles* v. *Public Works of Pittsfield,* 222 Mass. 93. There is no occasion to delimit the precise extent of the legislative power in this direction. It is sufficient to say that (except in a single particular in § 3 presently to be noted) the proposed bill does not overstep the limits of that power. It cannot be pronounced arbitrary, despotic or a flagrant misuse of legislative power. See *Philip Wagner, Inc.* v. *Baltimore,* 239 U. S. 207. It comes within the authority of adjudicated decisions. It contravenes no provision of the Constitution of this Commonwealth. In our opinion it violates no provision of the Constitution of the United States.

The final decree of the Supreme Judicial Court, affirming the report of the commissioners, was a judgment of a court. The Legislature cannot exercise judicial powers. That is prohibited by the clear words of art. 30 of the Declaration of Rights of our Constitution. Any legislative attempt to that end would be a nullity. Manifestly it is the exercise of judicial power to grant a new trial or a rehearing in a cause in the courts, or to declare ineffective or to reverse, annul, change, modify or affect the judgment of a court. *Denny* v. *Mattoon,* 2 Allen, 361. *Forster* v. *Forster,* 129 Mass. 559. *Opinion of the Justices,* 14 Mass. 472. *Butler* v. *Supervisors of Saginaw County,* 26 Mich. 22, 27. *Roberts* v. *State,* 160 N. Y. 217, 222. *Opinion of the Justices,* 3 R. I. 299. *Martin* v. *South Salem Land Co.* 94 Va. 28, 36. *Johannessen* v. *United States,* 225 U. S. 227. That part of § 3 of the proposed act which provides that "so much of the decision of the commissioners appointed under said act and of the decree of the court confirming the same as are inconsistent herewith are hereby superseded," is inconsistent with this principle, and would therefore be contrary to art. 30 of the Declaration of Rights. The judgment of a court must stand as final. It can be reversed, modified or superseded only by judicial process. It is wholly under the control of the

judicial department of government. The Legislature cannot "supersede" a judgment of a court by its direct declaration to that effect. Acting within the scope of its power, however, it may establish a division of the burdens of taxation different from that reached by appointees of a court in the exercise of a delegated *quasi* judicial power. While this distinction is narrow, it is none the less important in order to preserve observance of the constitutional mandate that no one of the three departments of government shall exercise even in the smallest particular the functions of either or both of the other departments of government.

We therefore answer the first two questions, propounded in the order, in the negative, and the third in the affirmative, except that the portion of § 3 following the words "hereby repealed" in line three thereof would be unconstitutional. We make these answers, however, subject to this reservation: The final decree of the Supreme Judicial Court after rescript was entered on February 10, 1920. The order conveys no information and we have none whether any rights have accrued since that date upon the faith of that decree. If such rights have intervened, we have no knowledge concerning them and cannot answer respecting them.

It has not been practicable for Mr. Justice Pierce, by reason of absence from the Commonwealth, to sign this opinion, but he has expressed concurrence in the result reached. By reason of having been consulted, while in the practice of his profession, respecting some aspects of the matters here involved, Mr. Justice Carroll asks to be excused from answering.

ARTHUR P. RUGG.
HENRY K. BRALEY.
CHARLES A. DE COURCY.
JOHN C. CROSBY.
CHARLES F. JENNEY.