**SOO LINE RAILROAD COMPANY,**
**Plaintiff,**

v.

**STATE OF WISCONSIN, DEPARTMENT OF TRANSPORTATION—DIVISION OF HIGHWAYS, and Lowell Jackson, Defendants.**

No. 79–C–8.

United States District Court,
W. D. Wisconsin.

April 7, 1980.

James W. Mohr, Jr., of Whyte & Hirschboeck, S. C., Milwaukee, Wis., for plaintiff.

Michael E. Perino, Asst. Atty. Gen., State of Wisconsin, Bronson C. La Follette, Atty. Gen., Dept. of Justice, Madison, Wis., for defendants.

## OPINION AND ORDER

JAMES E. DOYLE, Chief Judge.

This is an action for a declaratory judgment that Chapter 418, Section 923(48)(a), Laws of the State of Wisconsin (1977) (hereinafter "statute"), is unconstitutional and for an injunction permanently restraining state officials from proceeding in any way under the statute. On March 1, 1979, I entered an order denying plaintiff's motion for a preliminary injunction against the statute's enforcement. Plaintiff premises federal jurisdiction on 28 U.S.C. §§ 1331, 1332, 1343(3) and (4). Presently before me is defendants' motion to dismiss on the ground that the court lacks subject matter jurisdiction on any of the bases alleged in plaintiff's complaint.

Although the heading of the complaint is ambiguous, when I view it in the context of paragraph 2, I conclude, and so construe the complaint, that there are two parties named as defendant, the Wisconsin Department of Transportation and Lowell Jackson, its secretary, and that the State of Wisconsin is not a party.

For the purpose of deciding defendants' motion, I accept as fact the allegations of the complaint.

### Facts

On February 20, 1975, defendant Department petitioned the Public Service Commission (hereinafter PSC) for approval of a proposed at-grade crossing of relocated State Highway 13 with the tracks of plaintiff at a new location one-half mile west of the Village of Prentice, Price County, Wisconsin.

Plaintiff was a party to the hearing on this petition, opposing the Department's proposed at-grade crossing on safety grounds. On May 19, 1975, the PSC hearing examiner issued recommended findings of fact and a proposed order, which concluded that the establishment of an at-grade crossing at this location was advisable and that the public safety would be promoted by the use of flashing light signals with auxiliary cantilever signals.

On June 2, 1975, plaintiff submitted exceptions to the examiner's recommendations, contending that his summary of the evidence was incomplete and an insufficient basis for the PSC to reach a decision. Oral argument was held before the PSC on October 13, 1975, after which the PSC ordered a reopening of the proceedings for the receipt of additional evidence about the actual train operations at the site of the proposed at-grade crossing.

At an additional hearing held on February 17, 1976, plaintiff presented evidence about the effect of the proposed crossing on its operations. On December 23, 1976, the PSC issued findings of fact and proposed order, which included the determination that the at-grade crossing proposed by defendant Department "would endanger the public safety." *Before the Public Service Commission of Wisconsin*, 2–R–6098, Ultimate Finding of Fact No. 2. The PSC further determined that "an overhead structure to carry the highway above the railroad is advisable and will promote the public safety and convenience." *Id.*, Ultimate Finding of Fact, No. 3.

Based on these findings, under § 195.29, Wis.Stats., the PSC ordered defendant to establish such an overhead crossing over plaintiff's tracks.

On February 7, 1977, defendant Department sought judicial review of the PSC order under § 227.15, Wis.Stats. Defendants contended on this appeal that the PSC determinations were not supported by substantial evidence in the record. On October 13, 1977, the Dane County Circuit Court entered judgment affirming the PSC order, finding that its direction to defendant to establish an overhead crossing was supported by substantial evidence. *Wisconsin Dept. of Transportation v. P.S.C.*, Case No. 155–420 (1977). The Department did not appeal from the judgment of the Dane County Circuit Court.

Thereafter, the Wisconsin Legislature enacted the statute, published May 18, 1978, which plaintiff seeks to have declared unconstitutional.

The statute provides as follows:

(48) TRANSPORTATION (a) *Construction of the Prentice railroad overpass prohibited.* Notwithstanding sections 195.28 and 195.29 of the statutes or any order made thereunder, the department of transportation is prohibited from constructing or participating in the construction of a separated grade overhead structure intersecting relocated state trunk highway 13 and the Soo Line Railroad tracks located west of the village of Prentice in Price County. The department of transportation and Soo Line Railroad Company shall establish an at-grade crossing including automatic crossing protection for the relocated highway. Costs associated with construction of the at-grade crossing and crossing protection shall be paid from the appropriations under sections 20.395(1)(td) and (te) and (3) of the statutes, as appropriate.

The defendant Department has already made public requests for construction bids and intends shortly to enter into construction contracts for the at-grade crossing mandated by the statute.[1]

### Opinion

In addition to various state constitutional claims, plaintiff contends that the legislative reversal of the PSC order and the Dane County Circuit Court judgment constitutes the taking of plaintiff's property without due process in violation of the Fourteenth Amendment to the United States Constitution and an impairment of a contract between the state and plaintiff implicit in the PSC order, in violation of Article I, Section 10 of the United States Constitution. Plaintiff argues that these claims create jurisdiction under 28 U.S.C. § 1331. Plain-

1. On January 2, 1980, plaintiff moved a second time for a preliminary injunction. For the purpose of deciding defendants' motion, I accept as fact plaintiff's new allegation that defendant Department planned to receive construction bids on January 15, 1980, for completion of the challenged project—the grading portion having been essentially completed as of September, 1979.

tiff also contends that defendants' enforcement of this statute constitutes a violation of 42 U.S.C. § 1983, thus conferring jurisdiction under 28 U.S.C. § 1343(3) and (4). Plaintiff also asserts jurisdiction based on diversity of citizenship. 28 U.S.C. § 1332.

*28 U.S.C. § 1343(3).*

■ Section 1343(3) vests in the federal district courts original jurisdiction of any civil action authorized by law to be commenced by any person "to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States . . . ." The complaint here alleges that the plaintiff has been deprived by defendants of a right secured by the Constitution and that the defendants are acting under color of a state statute. Thus, subject matter jurisdiction appears to be present under § 1343(3) as to the federal constitutional claims. If the state law claims "derive from a . . . nucleus of operative fact" which is common to them and to the federal constitutional claims, as they do appear to derive, the exercise of pendent jurisdiction over the state law claims would be appropriate. *Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

■ However, defendants contend that jurisdiction over the subject matter of each of the critical federal claims is absent because the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction" or the claim "is wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682–683, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). The meaning of this jurisdictional test has been explored principally in the context of so-called federal question jurisdiction, 28 U.S.C. § 1331, but it has been held that the standards evolved for that purpose are applicable also with respect to § 1343(3), *Hagans v. Lavine*, 415 U.S. 528, 535–541, 94 S.Ct. 1372, 1378–1381, 39 L.Ed.2d 577 (1974), as well as to the now-repealed three-judge court statute, 28 U.S.C. § 2281. *Goosby v. Osser*, 409 U.S. 512, 518–519, 93 S.Ct. 854, 858–859, 35 L.Ed.2d 36 (1973). A complaint which fails to state a claim upon which relief can be granted may nevertheless survive a challenge to the court's subject matter jurisdiction. To be vulnerable to such a challenge, its lack of merit must be much more obvious.

■ Plaintiff claims a property right in the PSC order and Dane County Circuit Court judgment which cannot be destroyed by subsequent legislation without violating the due process clause. Plaintiff cites and analogizes from cases in which courts have held that the retroactive application of legislation to nullify judgments rendered under the previous state of the law deprives the possessor of that judgment of a property right without due process. *McCullough v. Commonwealth of Virginia*, 172 U.S. 102, 123–124, 19 S.Ct. 134, 141–142, 43 L.Ed. 382 (1898); *Hoyt Metal Company v. Atwood*, 289 F. 453, 454–455 (7th Cir. 1923). This protection from retroactively applied legislation has been extended to an adjudication by an administrative agency acting in a quasi-judicial capacity. In *Casieri's Case*, 286 Mass. 50, 190 N.E. 118 (1934), in a workers' compensation proceeding, an administrative determination had been made that the worker's disability had ended as of a certain date. No review of the determination had been sought. Under the law of Massachusetts at the time, the question was closed to subsequent reinquiry. A statute was then enacted permitting reinquiry, generally, into such determinations. It was held in *Casieri's Case* that to apply the newly enacted statute to permit reinquiry into final administrative determinations arrived at prior to its enactment would be to deprive the beneficiary of that administrative determination of a property right—in the administrative determination—without due process of law, in violation of the Fourteenth Amendment. See also *In re Opinion of the Justices*, 234 Mass. 612, 127 N.E. 635, 639 (1920) (a similar case in which the administrative determination had been affirmed on review by a court; decision based on state constitution); 3 A.L.R. 450. But see *Paramino v. Marshall*, 309 U.S. 370, 379, 60 S.Ct. 600, 603, 84 L.Ed. 814 (1940).

Defendants contend that the PSC order which was reversed by the legislature in the present case is not analogous to the kind of judicial or administrative determination which cannot be disturbed retroactively without violating due process. They argue that the PSC acts solely in a legislative capacity when determining the type of railroad crossing which promotes the public safety. They appear to analogize the PSC proceeding to a legislative hearing, which is not required by due process, but is simply a device for encouraging a wise ultimate legislative decision by providing the lawmaker with as much relevant information as possible. An order resulting from such a hearing should be considered, they assert, a "law" or "rule" promulgated within the legislative power delegated to the PSC.

Sections 195.28 and 195.29, Wis.Stats., allow a limited number of entities to petition the PSC for a hearing on whether a particular existing or proposed railroad crossing promotes the public safety. Although it was the Department which petitioned the PSC in the instant case, "any railroad whose track crosses or is about to cross, or is crossed or about to be crossed by a street or highway" is entitled to seek the same administrative determination. Sections 195.28, 195.29, Wis., Stats. By giving a railroad a right to institute the proceeding, the legislature has recognized that railroads whose tracks are about to be crossed by highways have an interest in the type of crossing more intense and specialized than the general public interest in public safety.

Sections 195.28 and 195.29 direct that in holding such a formal, public hearing, the PSC proceed in the manner provided in Section 196.26, Wis.Stats. The parties "shall be entitled to be heard and shall have process to enforce the attendance of witnesses." In fleshing out the requirements of a "formal public hearing" under § 196.26, the Wisconsin Supreme Court has held that the word "hearing" means the same as the word "trial" does in cases at law. *Wisconsin Tel. Co. v. P.S.C.*, 232 Wis. 274, 287 N.W. 122 (1939) *cert. denied* 309 U.S. 657, 60 S.Ct. 514, 84 L.Ed. 1006. The court then identified three substantial elements of a common law hearing at p. 294, 287 N.W. at p. 133:

(1) The right to seasonably know the charges or claims preferred; (2) the right to meet such charges or claims by competent evidence; and (3) the right to be heard by counsel upon the probative force of the evidence adduced by both sides and upon the law applicable thereto.

The statute thus contemplates a trial-type proceeding generally required when the rights of parties will be adjudicated, rather than the less formal information-gathering legislative hearing.

More specifically, the proceedings before the PSC appear to have been a "contested case" under Section 227.01(2), Wis.Stats., which is defined as:

. . . a proceeding before an agency in which, after hearing required by law, *substantial interests of any party to such proceeding* are determined or adversely affected by a decision or order in such proceeding. . . . (emphasis supplied)

Although neither the PSC nor the Dane County Circuit Court appears to have identified specifically the proceeding at issue as a "contested case," the evidence supporting such a characterization consists of the status given plaintiff at the hearing, the procedures followed by the PSC in making its determination, and the issues raised on appeal to the Dane County Circuit Court.

Soo Line was a "party" to the proceeding. Section 227.01(6), Wis.Stats. directs that "any person *whose substantial interests* may be adversely affected by any proposed agency action in a contested case shall be admitted as a party (emphasis added)". Plaintiff thus appears to have had an interest in the outcome of the hearing sufficiently "substantial" to have triggered the procedural protections of a "contested case."

Plaintiff presented testimonial evidence before the PSC and it cross-examined the witnesses produced by the defendant Department. The right to cross-examination "reasonably required for a full and true disclosure of the facts" is required in con-

tested cases, Section 227.08(6) Wis.Stats., but not in quasi-legislative rule-making proceedings. Section 227.022, Wis.Stats. The final decision of the PSC was in writing "accompanied by findings of facts and conclusions of law," as required for determinations in contested cases. Section 227.10, Wis.Stats.

On appeal to the Dane County Circuit Court, the Department argued that the PSC order must be set aside as not supported by "substantial evidence." The "substantial evidence" standard for agency fact finding is required only in contested cases. Section 227.20, Wis.Stats.

I have described only those procedures which can clearly be determined from the record, but they are sufficient for me to conclude that "contested case" procedures were followed in the PSC hearing and the appeal to state court. There is much to support a conclusion that the PSC was acting in a quasi-judicial capacity, and not in the quasi-legislative capacity governed by those sections of Chapter 227, Wis.Stats. which deal with rule-making proceedings. This conclusion would find support, too, in Wisconsin's definition of a "rule" which specifically excludes a decision or order in a contested case. Section 227.01(11)(b), Wis. Stats.

From all this, I cannot label as frivolous plaintiff's contention that the formality and elaborateness of the proceedings in the PSC and the circuit court in the present case sufficiently resemble the formality and elaborateness of the proceedings which resulted in the determinations in *McCullough, Hoyt*, and *Casieri's Case, supra.*

Defendants appear to argue that it is not a "judgment" which constitutes "property," within the meaning of the due process clause, but rather some underlying property interest recognized by state law, for example, the interest in land acquired by a grantee in a warranty deed, which is in turn reflected in or vindicated by the judgment. They contend that under Wisconsin law, the plaintiff enjoys no comparable underlying interest in operating its railroad free of the problems and expense created by an at-grade crossing with a highway. Defendants may well prevail in this contention, but, as noted above, there is respectable, although rather ancient and perhaps no longer controlling, authority for the proposition that one who obtains a "judgment" enjoys a property interest in the judgment itself.

Similarly, defendants seem to assert that even if a judgment itself may sometimes constitute property belonging to a person, for purposes of the due process clause, this is true only when the judgment emerges from a controversy in which some tangible interest of the victor is at stake, such as a money judgment in a contract case between private parties. This assertion, too, has force, but in practical terms the advantage flowing to plaintiff from the decisions of the PSC and the circuit court, and the disadvantage flowing from the enactment of Chapter 418, § 923(48)(a), seem rather tangible.

■ Defendants argue that plaintiff's challenge to the statute does not meet the requirement of § 1343(3) that the alleged constitutional violation be caused by a person acting "under color of state law"—a concept which has been held to have the same content as the Fourteenth Amendment's "state action" requirement. *United States v. Price*, 383 U.S. 787, 794, 86 S.Ct. 1152, 1156, 16 L.Ed.2d 267 (1965). Defendants contend that it was only the state legislators, in enacting the challenged statute, who have acted "under color of state law" and not the government agency or official charged with its enforcement and intending to enforce it. It is a contention devoid of merit. Since *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), it is clear that when a state official is about to enforce a statute alleged to violate the due process clause of the Fourteenth Amendment, there is sufficient state action to support federal jurisdiction of plaintiff's request for an injunction against the enforcement.

■ Defendants contend further, that as to the named defendant Department of

Transportation, plaintiff's action is barred by the Eleventh Amendment. The injunction sought here is prospective only and would not impose a retroactive monetary burden on the state treasury. In this circumstance, the Eleventh Amendment clearly does not deprive the court of jurisdiction over defendant Jackson. In view of my decision to abstain, explained below, it is unnecessary presently to decide whether the Department is to be equated with the state for Eleventh Amendment purposes.

I express no opinion on the ultimate success or failure of plaintiff's due process claim. I hold, however, that it is not so frivolous or insubstantial as to warrant a dismissal on jurisdictional grounds. The court has jurisdiction under 28 U.S.C. § 1343(3).

*Other jurisdictional bases*

Because jurisdiction is present under § 1343(3) and by the exercise of pendent jurisdiction, it is unnecessary to consider whether jurisdiction is present as well under 28 U.S.C. §§ 1331 or 1332.

*Abstention*

■ Defendants argue that should I find a federal jurisdictional base, as I have, I am required to abstain from exercising that jurisdiction if state law enmeshed in the case is unclear and a state court resolution of that unclarity might moot the federal constitutional issue. *Railroad Commission of Texas v. Pullman Company*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Defendants contend that both circumstances exist in this case. Plaintiff interprets *Pullman* abstention as requiring that the statute under attack must be unclear.

Plaintiff's position is based on a misreading of the *Pullman* facts. In *Pullman*, the challenged regulation was clear. But the state statute under which the Texas Railroad Commission asserted the authority to promulgate the challenged regulation was open to a construction which would moot the constitutional issue—i. e. if the Commission had no authority under state law, the regulation would be struck down without reaching its constitutionality.

Even though a federal court has power under Art. III to construe state law, because its judgment can be only a forecast rather than the authoritative determination which would result from a state court construction, *Pullman* requires that unclear state law issues be adjudicated in state court, with the federal court left open if the federal issues remain in the case.

The relationship between plaintiff's constitutional challenge and unclear state law in this case is similar to that in *Pullman*. It is true that the challenged statute itself is clear. But the question of the constitutionality of this statutory reversal of the PSC and circuit court decisions cannot be answered without understanding the nature of plaintiff's interest in the choice among alternative types of crossings and without understanding the nature of the PSC's role and the circuit court's role in a contest of this kind—both matters which are totally defined by state law. *Pullman* directs that it is not my role to forecast how a state court would resolve these issues. Section 806.04(2), Wis.Stats. appears to provide a procedure whereby plaintiff can challenge this statute in state court.

Additionally, plaintiff challenges the statute on state constitutional grounds, relying on state constitutional provisions controlling the legislative process which have no counterpart in the federal constitution. In *Reetz v. Bozanich*, 397 U.S. 82, 87, 90 S.Ct. 788, 790, 25 L.Ed.2d 68 (1970), the court found a classic abstention situation presented by these circumstances, stating:

> The *Pullman* doctrine was based on "the avoidance of needless friction" between federal pronouncements and state policies. 312 U.S. at 500, 61 S.Ct. at 645. The instant case, is the classic case, in that tradition, for here the nub of the whole controversy may be the state constitution.

Even were I to find a jurisdictional basis for this lawsuit in diversity of citizenship, I would be required to abstain (if not to dismiss) by the holding in *Kelly Services Inc. v. Johnson*, 542 F.2d 31, 33 (7th Cir. 1976).

*Order*

It is ordered that this action be stayed, pending determination of the state law issues by the state courts.