INHABITANTS OF SCITUATE & others *vs.* INHABITANTS OF WEYMOUTH & others.

After the legislature, by a special statute, has laid out a bridge as a public highway, and imposed the expenses of repairing and maintaining it upon such towns as commissioners to be appointed by this court should determine were specially benefited by the laying out of the way, and the report of the commissioners has been accepted by the court, the legislature still has authority to transfer, by a subsequent special statute, the burden of all such expenses incurred after its passage, to such towns as other commissioners, to be appointed by the governor, shall determine are or will be specially benefited by the laying out.

EXCEPTIONS to a determination and decree reported to this court by commissioners under the St. of 1870, *c.* 265.

The St. of 1862, *c.* 177, in § 1 laid out the turnpike and bridges of the Hingham and Quincy Bridge and Turnpike Corporation, in the towns of Quincy, Weymouth and Hingham, as a public highway on and after July 4, 1862, and in § 2 imposed upon those towns respectively the maintenance of so much of it as lay in their limits, excluding the abutments, bridges, draws and piers. By § 3 it provided for the appointment of commissioners by this court to determine and decree, among other things, what towns in Norfolk and Plymouth were benefited by the provisions of § 1, and in what proportions and manner said towns should defray the expenses of maintaining said abutments, bridges, draws and piers, and that their determination and decree should be binding on the said counties and towns.

The commissioners who were thereupon appointed reported to this court an award and decree, which was accepted and affirmed at April term 1863 for Suffolk, (see 6 Allen, 353,) and which determined that in Norfolk the towns of Quincy and Weymouth, and in Plymouth the towns of Hingham, Cohasset, Scituate, South Scituate and Marshfield were benefited by the provisions of § 1, and should defray the expenses of maintaining the abutments, bridges, draws and piers, in certain proportions, of which those decreed for Quincy, Weymouth and Hingham were respectively $\frac{5}{40}$, $\frac{3}{10}$ and $\frac{7}{40}$.

The St. of 1870, *c.* 265, entitled an act to amend the St. of 1862, *c.* 177, provided in § 1 that the governor, with consent of the council, should appoint commissioners who after due notice and hearing should determine and decree what towns and cities " are or will be specially and directly benefited by the provisions of the first section of the act hereby amended, and also in what proportions and manner the said towns and cities shall defray the expenses incurred after the passage of this act for the maintenance and repair of the abutments, draws, piers and bridges mentioned in said act ; " that their determination and decree should be reported in writing to this court for either of the counties of Plymouth, Norfolk or Suffolk ; and that upon its acceptance by the court, after due notice to each of said cities and towns, it should be binding upon them.

In January 1871 the commissioners appointed under this statute reported to the court in this county a determination and decree that no cities, and only the towns of Quincy, Weymouth and Hingham, are or will be specially and directly benefited by the provisions of the St. of 1862, *c.* 177, § 1 ; and that those towns should defray the expenses of maintaining and repairing the abutments, piers, draws and bridges since the St. of 1870, *c.* 265, in the proportions respectively of $\frac{5}{24}$, $\frac{1}{2}$ and $\frac{7}{24}$. Notice was thereupon issued, and at May term 1871 the town of Weymouth filed exceptions to the report and objected to its acceptance, on the fol lowing grounds :

1. Because, if accepted, it would invalidate the decree of the former commissioners, accepted and affirmed by the court in 1863.

2. Because " said act, [St. of 1870, *c.* 265,] being a special act, undertakes to authorize the commissioners to take from certain towns burdens and obligations to which they were legally liable, and impose them upon certain other towns, including " the town of Weymouth.

3. Because " the act undertakes unconstitutionally to give to the commissioners the discretion as to what towns shall bear the burden of keeping the bridges in repair, and in what proportions."

4. Because, " if the legislature has any power to change said burdens and obligations, as established by said decree of this court, it has unconstitutionally attempted by said act to transfer that power to the commissioners."

5. Because " said act is in other respects unconstitutional and void."

6. Because " said commissioners have exceeded the authority granted by said act, and have not complied with its requirements."

7. Because " said decree of the commissioners is not in conformity with the intent and meaning of said act."

The case was thereupon heard by *Gray*, J., and reserved by him for the determination of the full court " upon the report of the commissioners, the above exceptions, and the former report and decree therein referred to."

*W. Gaston & J. Humphrey*, for the Inhabitants of Weymouth.

*P. Simmons, B. W. Harris & A. French*, for the Inhabitants of Scituate, South Scituate, Marshfield and Cohasset.

MORTON, J. We are of opinion that none of the objections made by the town of Weymouth to the award of the commissioners in this case can be sustained.

It is too well settled to be disputed, that it is within the constitutional power of the legislature to make laws for the construction, support and maintenance of roads and bridges, and for the distribution among the counties and towns of the burdens of maintaining them ; and this power may be exercised by the legislature, in its discretion, either by general or special laws. It is clear also, that it is competent for the legislature to delegate to com-

missioners the authority to determine the amount or share of these burdens which shall be borne by the several counties or towns. *Salem Turnpike & Chelsea Bridge Co.* v. *Essex,* 100 Mass. 282. *Hingham & Quincy Bridge & Turnpike Co.* v. *Norfolk,* 6 Allen, 353. *Attorney General* v. *Cambridge,* 16 Gray, 247. *Harwich* v. *County Commissioners,* 13 Pick. 60. In the exercise of this power the legislature passed the St. of 1862, *c.* 177, under which the town of Weymouth now claims, and which has been held by the court to be constitutional and valid. *Hingham & Quincy Bridge & Turnpike Co.* v. *Norfolk,* 6 Allen, 353. That statute, so far as regards the maintenance of the bridges, was not in any sense a contract with the towns affected by it. It was an exercise of the authority of the legislature to distribute public burdens and duties. It is clear that, under the same constitutional power, it had the right to change the law and redistribute these public burdens, if from a change of circumstances or other reasons it deemed it just and proper so to do. *Cambridge* v. *Lexington,* 17 Pick. 222. *Attorney General* v. *Cambridge,* 16 Gray, 247.

The obligation of the town of Weymouth under the act of 1862 was not founded upon any contract, express or implied. It did not acquire any vested right to require of the other towns the contribution towards the expenses of maintaining the bridges fixed by that act. The argument, therefore, that the amendatory act of 1870, *c.* 265, is unconstitutional because it impairs the obligation of a contract or defeats vested rights, is unfounded.

Another objection, made to the constitutionality of the statute of 1870, is that it sets aside and invalidates a decree of this court, and therefore is an exercise by the legislature of judicial powers. The decree, which it is claimed is set aside, is the decree accepting and affirming the report of the commissioners under the act of 1862. But the act of amendment does not set aside this decree, and is not inconsistent with it. It recognizes the validity of the decree, and of all the acts done under it, and provides merely for determining the mode in which the burden of supporting the bridges shall be borne in the future. It no more sets aside the decree than it would if it had provided that the bridges should be

discontinued, or should hereafter be supported by the Commonwealth.

Under the first act, the questions as to what towns should maintain the bridges and in what proportions the expenses should be borne were not the subject of judicial inquiry and determination. Those were questions for the legislature, which it might determine by a committee of its own body, or by commissioners appointed as it saw fit, and the determination of them was left to commissioners. The only judicial action of the court was to supervise the doings of the commissioners, to see that they duly and legally exercised the powers conferred upon them. That judgment is not annulled or reversed by the act of 1870.

We are unable to see any force in the objection that the law is invalid because it " requires the award to be retroactive." The law itself is not retroactive. It authorizes the commissioners to determine in what proportions and in what manner the towns and cities benefited by the bridges shall pay the expenses incurred after the passage of this act for their maintenance ; and their report follows the terms of the statute.

These views are decisive of all the objections urged by the town of Weymouth against the validity of the act. The legislature had the power to determine the mode in which the public burden of maintaining those bridges should be borne in the future, and it was competent for them to delegate to commissioners, appointed in any manner they saw fit, the authority to determine by what towns and in what proportions the expenses should be paid. No valid objection is made to the action of the commissioners. They appear to have duly exercised the authority conferred upon them, and to have acted in conformity to the requirements of law. Their report therefore ought to be approved and affirmed.                                    *Report accepted.*