Hosea Kingman & others, petitioners.

Suffolk.　December 9, 1897. — January 7, 1898.

Present: Field, C. J., Holmes, Morton, Lathrop, & Barker, JJ.

*Metropolitan Sewerage Act — Neponset River Valley System — Award of Commissioners.*

An award of commissioners appointed under St. 1895, c. 406, (relating to the Neponset River Valley system of sewage disposal,) who were to determine, "in such manner as they shall deem just and equitable," the proportions in which the city and towns named in the statute shall make the payments provided for therein, apportioned the payments needed to meet the interest and sinking fund requirements which represent the cost of construction upon the basis of valuation of the real estate and personal property of the inhabitants, and the payments required to meet the annual cost of maintenance and operation upon the basis of population, with proper deductions in each instance for the valuation and population of such areas as cannot be drained into the system. A town dissatisfied with the award objected to its acceptance, alleging facts which apparently were presented to and considered by the commissioners. *Held*, that a decree accepting the award should be affirmed.

In a case where the construction and subsequent operation of a great public sewer

is intrusted by the Legislature to a public board, where the cost is in the first instance advanced from the treasury of the Commonwealth, and the question at issue concerns the adjustment of the proportions in which certain municipalities shall reimburse the Commonwealth, and shall contribute to the cost and maintenance of the sewer from year to year, this court must assume, not only that the plans adopted and entered upon will be seasonably carried out, but that, if for any unforeseen circumstances they shall not be carried out, the Legislature will exercise its power to make a new and equitable adjustment, according to circumstances, as they shall exist.

MOTION, by the Metropolitan Sewerage Commissioners, for the acceptance and confirmation of the report and award of the commissioners appointed under St. 1895, c. 406, relating to the Neponset River Valley system of sewage disposal, to make the apportionment therein provided for.   The town of Milton objected to such acceptance and confirmation, and moved that the report and award be recommitted to the commissioners. Hearing in this court, before *Morton*, J., who entered a decree accepting and confirming the report and award ; and, at the request of the town, reported the case for the consideration of the full court.   The facts appear in the opinion.

' *J. D. Colt*, for the town of Milton.

*W. D. Turner*, for the petitioners.

BARKER, J.   The Neponset River Valley Sewerage System was provided for by St. 1895, c. 406, and the petitioners were directed to construct, maintain, and operate it.   The provisions of the statute are substantially like those of St. 1889, c. 439, under which the same petitioners have built and operated the North Metropolitan and the Charles River sewerage systems, and which were considered by this court in the cases of *Kingman, petitioner*, 153 Mass. 566, and 156 Mass. 361.   The expense of construction and operation of each system is paid by the petitioners from money advanced from the treasury of the Commonwealth.   The money so advanced for construction is the proceeds of a loan negotiated by the Commonwealth, to be paid at its maturity out of a sinking fund, to be made up to the Commonwealth by the city of Boston, and the towns of Dedham, Hyde Park, and Milton, by which municipalities the interest upon the loan and the expense of operating the system are also to be reimbursed.   The loan will mature in the year 1935. The municipalities named are required in each year to repay to

the Commonwealth the money required to meet the interest upon the loan and for the sinking fund for its extinguishment at maturity, and also the expense of the operation of the system. The proportions in which the municipalities shall contribute to these payments are to be determined every five years, by commissions appointed upon the application of the petitioners, by the Supreme Judicial Court sitting in equity. The statute provision is that the commissioners so appointed " shall, after due notice and hearing, and in such manner as they shall deem just and equitable, determine for said system the *proportion in which* the city and each of the towns hereinbefore named shall annually pay money into the treasury of the Commonwealth for the term of five years next following the year of the first issue of said scrip or certificates, to meet the interest and sinking fund requirements for each of said years, as estimated by said treasurer, and to meet the cost of maintenance and operation of said system for each of said years, as estimated by the said board and certified to said treasurer, and any deficiency in the amount previously paid in, as found by said treasurer. In making their award the commissioners may take into consideration the amount of the use of the sewers by said city or towns respectively, the population and valuation thereof, and also the extent, if any, to which said main sewers relieve the city or towns respectively of the necessity of constructing local sewers at their own charge, and any other considerations as may seem to them just and equitable, and shall return their award into said court; and when said award shall have been accepted by said court, the same shall be a final and conclusive adjudication of all matters herein referred to said commissioners, and shall be binding on all parties." St. 1895, c. 406, § 16.

The award apportions the payments required to meet the interest and sinking fund requirements which represent the cost of construction upon the basis of valuation, and the payments required to meet the annual cost of maintenance and operation upon the basis of population, with proper deductions in each instance for the valuation or population of such areas as cannot be drained into the system. This basis of valuation includes both the valuation of the real estate and of the personal property of the inhabitants. The proportions so fixed by the

award require the payment by the town of Milton of 45.07 per cent of the annual payments for interest and sinking fund requirements for the first five years, and of 16.50 per cent of the annual cost of maintenance and operation for the same period.

The award was made on October 16, 1896, and pending its acceptance by the Supreme Judicial Court sitting in equity for the county of Suffolk, the town of Milton, on December 28, 1896, filed a motion alleging that the apportionment was unjust, unequal, and inequitable, and asking that the award be recommitted. In support of this motion, the town, on March 1, 1897, filed further allegations of fact, which they prayed for opportunity to prove and verify. The question of the acceptance of the award was heard by Mr. Justice Morton, sitting in equity, no party objecting to the acceptance except the town of Milton, and the award was accepted, and the cause at the request of the town was reported to the full court for a review of the matters passed upon, so far as they may be open to the town. The report states that, for the purposes of the hearing before the single justice, it was assumed that the facts alleged by the town were true, and also that at the time of that hearing the portion of the Dorchester intercepting sewer which lies between its Central Avenue terminus and Granite Bridge had not been taken by the petitioners as a part of the Neponset River system, but remained the property of the city of Boston. The same state of things continued at the time of the hearing before the full court, and still continues.

The allegations of the town, which, for the purposes of the hearing at which the award was accepted, Mr. Justice Morton assumed to be true, are in substance these. That a part of the town containing about 2,224 acres, with a valuation of over eight millions of dollars and a population of about 1,751 persons, nearly one third of the whole population of the town, cannot be drained into the system, unless the portion above mentioned of the Dorchester intercepting sewer is taken and made part of the system. The town extends easterly to tide water, while Hyde Park, Dedham, and the West Roxbury district of Boston are distant from tide water. No part of the sewer is within the town, and large portions of the town are so located that the use of the sewer would be practically impossible. The district of

East Milton is so situated that any main sewer leading from it would enter the main sewer of the city of Boston below Granite Bridge, and a portion in Blue Hill district would have to be drained through the town of Quincy, while another portion, lying north of Brush Hill, is so situated that its sewage could reach the system only by a sewer through Hyde Park, for which no provision is made in the statute. The population of the town is 5,518, which is only 15.70 per cent of the population of the whole district intended to be drained by the system, and the real estate valuation of the town is $7,621,000, or 23.70 per cent of the real estate valuation of the same district. The number of separate dwelling-houses in the town is 1,082, or 15.80 per cent of the whole number of similar buildings in the district. The total area of the town is 7,040 acres, or 28.10 per cent of the whole area to be drained by the system. The population of the town is less than one half of that of Hyde Park, about three fourths of that of Dedham, and about one half of that of the portion of Boston which is within the drainage area of the system. The real estate valuation of Milton is $136,000 less than that of Hyde Park, about $720,000 less than that of Dedham, and about $760,000 less than that of the part of Boston within the district. The number of dwelling-houses in Milton is less than half the number in Hyde Park, less than two thirds the number in Dedham, and about one half the number in the part of Boston within the district. The average daily consumption of water in the part of Boston within the district is 1,040,000 gallons, in Hyde Park 482,000 gallons, in Dedham about 175,000 gallons, and in Milton 133,000 gallons, or about 14.90 per cent of the whole consumed in the district. The part of Boston within the district, Hyde Park, and a considerable portion of Dedham are so thickly settled and populated as to make some adequate system of sewage disposal a present necessity, while Milton, with the exception of a limited tract near Mattapan station, a small tract at Central Avenue station, and a small tract at and near Milton Lower Falls station, is strictly a rural district in which there is only one dwelling-house for many acres of land. There is a present necessity for a drainage system for Dedham, Hyde Park, and Boston, and none for Milton. The entire sewage of Milton could be conducted through a seven-

inch pipe, and be disposed of through the Boston sewers, at an annual expense of $800, while the Neponset River system's sewer is to be of a size from 30 by 31 to 54 by 55 inches, and the total cost of the system will be $800,000.

In brief, the town contends that the valuation of personalty ought not to be taken into account in fixing the proportions to be paid by the several municipalities, and also that its own location adjoining tide water, and its comparative area, population, number of dwelling-houses, real estate valuation, daily consumption of water, its present need of sewerage, present small amount of sewage and the slight expense by which it can be otherwise disposed of than through the Neponset River system, all show that the town of Milton should bear a less proportion of the cost of the system than either of the other municipalities, whereas its proportion fixed by the award is much larger than that of either of the other municipalities, and is over forty-five per cent of the whole cost, and, further, that its proportion of the expense of maintenance and operation is too large.

It is urged by the counsel for the petitioners, that all these matters might have been, and no doubt were, considered by the commissioners before making the award, and are not open upon the question whether the decree accepting the award shall be affirmed by the full court. It may be doubted whether there is anything in the statute of 1889, or in the practice of courts of equity, which allows objections to such an award to be taken for the first time by a motion to recommit, or to require us to consider them, without its appearing that the objections were urged and the alleged facts put before the commission. Nor do we now attempt to define what power we have in case of an award of a commission to which the Legislature has given the power to make such an apportionment of a public burden as may seem to the commissioners just and equitable, besides rejecting the award, recommitting it, or accepting it, upon examination of the award itself. We deem it well, however, in the present instance, in affirming the decree accepting the award, to consider upon their merits the matters urged by the town of Milton.

The Legislature, while saying that the commissioners might take certain matters into consideration in making their award, yet provides that they shall make the apportionment in such a

manner as they shall deem just and equitable. The award itself states a number of bases of apportionment which were urged or suggested at the hearings before the commissioners; and from this statement it is clear that the facts now alleged by the town of Milton, so far as they then appeared, and the grounds now urged, were considered and weighed by the commissioners, and that upon the whole they deemed it just and equitable to fix the apportionment of the cost of the construction of the system by means of real and personal valuation alone. The reasons given in the award for this determination are, that so far as is consistent with substantial justice it is desirable that the basis and method of apportionment should be simple, definite, easily understood, and of familiar application; that the taxable value of real and personal property is a fact carefully ascertained, and a matter of public record about which there can be no dispute, and is a usual and approved factor in the apportionment of public burdens; that the sewerage system was established to promote the public health, to avert disease, and to prevent nuisance; and that the commissioners were unable to find, upon the whole, any better measure of the ability and duty to contribute to the cost of public works of this character than the taxable valuation of the several cities and towns composing the district for whose common welfare the system was created. They accordingly used that measure, making proper deductions for non-drainable areas.

In our opinion, the respondent has not shown that this conclusion of the commissioners was not sound and just. The Neponset River system was not established merely to add to the value of a certain tract of land, or to abate a certain present nuisance; but for more general benefits, coming, as was said in *Kingman, petitioner*, 153 Mass. 566, 578, from " the probability of better health and greater personal comfort for the people at large," and looking mostly to the expected future growth of the district in point of population and wealth.

The system is distinctly a public work, the cost of which the Legislature, within its well recognized powers, has seen fit to impose on the four municipalities concerned in the award. The doctrine that persons and municipalities who are required to help in bearing a public burden shall do so in proportion to

their ability, and that their ability shall be measured by the valuation of their real and personal property has always obtained in this Commonwealth, and yet meets with the approval of its citizens. We see no injustice in saying that the valuation of the personal property of these several municipalities shall be taken into account in fixing the proportions in which they shall bear the cost of the system established for the general good of the whole locality. Upon a no doubt careful view of the whole situation the commissioners have found that it was just and equitable that the cost of construction should be apportioned upon that basis alone, and the facts alleged, showing inequalities in the situation and needs of the several municipalities, and in the advantages which they. will receive, do not convince us that the award is unjust or inequitable.

The objection founded upon the fact that the portion of the Dorchester intercepting sewer before referred to has not yet been taken by the petitioners must be further considered. The award itself states that the apportionment is framed on the assumption that the portion will become a part of the system, and that, if for any unforeseen cause the plan should fail to be carried out, a revision of the apportionment would be necessary. One of the facts alleged by the respondent is, that, unless this part of the intercepting sewer is taken, a part of Milton containing about 2,224 acres, with a population of about 1,751 persons, and a property valuation of over eight millions of dollars, cannot be drained into the system. Deductions for the population and the valuation of areas which it is physically impossible to drain into the system were rightly made in determining the proportions awarded, and we assume that such deductions should be made in respect of the valuation and population of this area, unless the plan of taking the portion of the intercepting sewer is to be carried out as assumed by the award. As the whole valuation of the town, as established by St. 1895, c. 90, is less than twenty-two millions of dollars, the deduction of over eight millions for the area mentioned would make a very great reduction of the proportion of the cost of construction to be paid by the town; and a deduction for the population of the same area would make a very sensible reduction of the town's proportion of the cost of maintenance and operation. More than

a year has gone by since the filing of the award, and there has been the usual session of the Legislature. But it is to be noticed that this first apportionment is made before the completion of the system, so that it is an apportionment based, so far as the whole area to be drained by the system is concerned, upon future conditions, to be brought about by the ultimate completion of the system as planned; that this first apportionment is part of a plan settled by the Legislature for the adjustment between the four municipalities and the Commonwealth of the cost of a public work, the expense of which is paid in the first instance out of the treasury of the Commonwealth, but which. the Legislature has required to be reimbursed by those municipalities; and that, so far as the cost of construction is concerned,. this is but one of several apportionments, to be made before the cost is finally reimbursed to the Commonwealth. We cannot. fairly assume from the interval which has elapsed that a paper taking, which the petitioners have authority in law to make, will not be seasonably made in order to perfect the plan of the system, nor that the Legislature will fail to make, in due time, adequate provision for the entire cost of the system. We notice that in the second apportionment for the cost of construction of the North Metropolitan system consideration was given to the fact that the section of Wakefield, which was annexed to the district after the making of the first apportionment, had contributed nothing to the cost of construction during the first term of five years. Whether, if the necessary portion of the intercepting sewer shall not be added to the Neponset River Valley system, the resulting injustice to the town of Milton could be remedied in a similar way in the next quinquennial apportionment under St. 1895, c. 406, we need not now determine. The Legislature, at least, has power to change the proportion which each municipality shall pay, and to provide by new legislation for a new scheme for the distribution of the burden. See *Scituate* v. *Weymouth,* 108 Mass. 128; *Agawam* v. *Hampden,* 130 Mass. 528; *Kingman, petitioner,* 153 Mass. 566, 577, 580. In a case like the present, where the construction and subsequent operation of a great public sewer are intrusted by the Legislature to a public board, where the cost is in the first instance advanced from the treasury of the Commonwealth, and the question at issue con-

cerns the adjustment of the proportions in which certain municipalities shall reimburse the Commonwealth, and shall also contribute to the cost of the maintenance and operation of the sewer from year to year, we must assume, not only that the plans adopted and entered upon will seasonably be carried out, but that, if for any unforeseen circumstances they shall not be carried out, the Legislature will exercise its power to make a new and equitable adjustment, according to circumstances as they shall exist. Not being at present justified in assuming that the plan upon which the Neponset River Valley system was begun will not be carried out, it is our present duty to affirm the decree accepting the award of December 16, 1895.

*So ordered.*