CITY OF CHELSEA *vs.* TREASURER AND RECEIVER GENERAL & others.

Suffolk.    November 17, 1920. — February 28, 1921.

Present: RUGG, C. J., BRALEY, CROSBY, & PIERCE, JJ.

*Certiorari.* *Constitutional Law,* Government operation of public utility, Due process of law. *Boston Elevated Railway Company.* *General Court.* *Chelsea.* *Tax,* Referendum of tax legislation, To support public utility and pay dividends to stockholders.

A petition for a writ of certiorari cannot be maintained against a person named as Treasurer and Receiver General who has ceased to hold that office.

The duties imposed on the Treasurer and Receiver General under Spec. St. 1918, c. 159, are not subject to examination by certiorari. *Boston v. Treasurer & Receiver General, ante,* 403, adopted and affirmed.

Provision for notice and a public hearing by the trustees of the Boston Elevated Railway Company to the cities and towns to be affected is not essential to the validity of Spec. St. 1918, c. 159.

The assessment authorized by Spec. St. 1918, c. 159, § 14, is an apportionment of one of the burdens of general taxation and has nothing in common with a betterment assessment.

The provisions of Spec. St. 1918, c. 159, § 14, violate no constitutional provision in providing for the assessment or in ascertaining its apportionment.

The authorities conferred by Spec. St. 1918, c. 159, upon the trustees of the Boston Elevated Railway Company are administrative and not legislative and violate no constitutional mandate.

A municipality is without power to institute litigation and to represent individual taxpayers in certiorari proceedings to assail the constitutionality of Spec. St. 1918, c. 159.

The city of Chelsea filed a petition for a writ of certiorari against the Treasurer and Receiver General of the Commonwealth and the trustees of the Boston Elevated Railway Company assailing the constitutionality of an assessment and apportionment of a tax under Spec. St. 1918, c. 159. The trustees filed a return setting forth in detail the methods pursued by them in ascertaining the

facts which formed the basis of their conclusions and their acts. It was *held,* that

(1) The petition failed to set out any private property right in the petitioner in any way to be affected by the assessment;

(2) The return of the trustees of the Boston Elevated Railway Company to the petition must be taken to be true in its statement of facts;

(3) It was plain from the return of the trustees that the trustees gave adequate hearing to the petitioner;

(4) The method followed by the trustees in ascertaining the proportion of persons in the several cities and towns using the service of the railway company as the basis for the assessment and the computations made therefor did not contravene any provision of the Constitution;

(5) The facts stated in the return of the trustees demonstrated that they proceeded with deliberation, sagacity, in a spirit of justice and according to law;

(6) Section 14 of Spec. St. 1918, c. 159, taken in connection with St. 1919, c. 344, § 4 and similar provisions in succeeding annual statutes assessing the State tax, makes provision for a resort to the courts, even by the petitioner, so that there may be a hearing in court as to the validity of the tax in any respect wherein the petitioner is affected and is entitled to be heard.

The fact that a demand was made upon the Commonwealth under Spec. St. 1918, c. 159, § 14, before the State tax statute of 1919 was enacted, although the payment by the Commonwealth to the trustees of the Boston Elevated Railway Company was not made until after the enactment of the State tax statute, was sufficient to warrant addition to the State tax of that year of the amount so demanded.

PETITION, filed in the Supreme Judicial Court on October 21, 1919, for a writ of certiorari addressed to the Treasurer and Receiver General of the Commonwealth and the trustees of the Boston Elevated Railway Company directing them to certify to the court their records relating to the determination, report and assessment upon the petitioner by an addition to the State tax of the payment made by the Commonwealth to the trustees of the Boston Elevated Railway Company under the provisions of Spec. St. 1918, c. 159.

From the returns filed by the respondents it appeared that

"During the year from July 1, 1918, to July 1, 1919, the income of the company was insufficient to meet the cost of the service as defined in said act, and on or about July 1, 1919, the trustees notified the Treasurer and Receiver General of the Commonwealth of the approximate amount of the deficiency which the Commonwealth was called upon to pay under the provisions of § 11 of said act. On July 16, 1919, the trustees notified the Treasurer and Receiver General of the exact amount of said deficit afore-

said and called upon him for payment in accordance with the provisions of § 14 of said act."

On July 24, 1919, said amount of $3,980,151.67 was paid to the company by the Treasurer and Receiver General.

The trustees on June 30, 1919, passed the following vote:

"Voted: That in order to secure the information required by Section 14 of Chapter 159 of the Special Acts of 1918, counts shall be made showing the number of passengers paying cash fares who board the cars of the Company within each city and town served by the Company and that separate counts shall be made of the passengers boarding the Company's cars and paying cash fares who come from outside street railway lines, and also of passengers who board the Company's cars on streets at or near the boundaries of cities and towns and who pay cash fares; said several counts to be made on the day the payment for the past year's deficit is made to the Company by the Treasurer and Receiver General of the Commonwealth, and on the two following days."

"Counts in the manner ordered above were in fact taken on said day and on the three days following the day of payment (making four in all) and [the trustees] thereafter determined in their discretion that owing to peculiar conditions existing at that time the period of four days should be used in the manner indicated in the vote hereinafter set forth."

The computations set out in detail in the return show that the number of persons in Chelsea using the service of the company on those days was twenty-nine thousand six hundred and fifty-nine and that this total bore to the total number of persons using the service likewise computed, the ratio of one and one hundred and fifty-seven ten thousandths per cent.

On July 29 the trustees passed the following vote:

"Voted: To give a hearing to the representatives of cities and towns in which the Company operates on Tuesday, August 5th, next, at two P.M., on the question of the manner and method which should be employed in determining the proportion of the deficit for the year ending June 30, 1919, which should be assigned to each of such cities and towns."

"Notice of the time and place of hearing in accordance with said vote was given to all the cities and towns against which any

portion of the deficit for the year ending June 30, 1919, was thereafter assessed, said notice being sent by registered mail directed to the Mayor and Chairman of Selectmen of each of said cities and towns respectively, and a return registry receipt was duly received from each; and that in accordance with said notice a hearing was held on August 5, 1919, at which were present" representatives of the several municipalities including Chelsea. "Opportunity was given for the presentation of evidence and arguments and thereafter announcement was made that briefs would be received from those wishing to file them up to Monday, August 11, at 10 A.M.  At the request of the city solicitor of the city of Boston, a further hearing was announced for Monday, August 11, 1919, at 2 P.M."

"At said hearing on August 11 the city solicitor of Chelsea requested an adjournment of the hearing, stating that he desired to introduce evidence of the persons using the service in Chelsea and to examine the computations of the trustees and the rules of law which they propose to apply in determining the issues.  The trustees ruled that the matters at issue required speedy action and offered to hear then any evidence which might be offered and to consider any requests for rulings of law to be applied in determining the issues, but that the trustees could not continue the hearing.  No person made request for rulings of law."

After the close of the hearing before said trustees, on August 12, 1919, on motion duly made and seconded, it was —.

"Voted: That for the purposes of determining and reporting to the Treasurer and Receiver General of the Commonwealth the proportion in which cities and towns should be assessed on account of the deficit in operating this Company from July 1, 1918, to June 30, 1919, the General Auditor be directed to make the necessary compilations, having regard for the following rules:

"1.  A daily average shall be computed from the traffic counts heretofore authorized and taken on July 24th, the date of the payment from the Treasurer and Receiver General of the Commonwealth to this Company, and on the three succeeding days.

"2.  Each city and town in which the Company operates shall in general be charged with the persons therein who actually use the service of the Company by becoming passengers and who pay a cash fare therefor.

"3. Every passenger boarding this Company's cars at a junction point and making a through journey from a point located in a city or town in which this Company does not operate its lines shall be excluded from any computation, but in order that passengers who start their journey within municipalities in which the Company operates may be charged to such municipalities although received from a connecting carrier or boarding at a junction point there shall be excluded the following only: . . .

"At Bellingham Street, Chelsea, 10% of the passengers. . . .

"Also in making said computation, each passenger paying a cash fare shall be chargeable to the community in which he boarded the company's cars," with certain exceptions.

"And thereafter the General Auditor of the Company made said compilations and the trustees found as a fact that they were correct, and upon said evidence and the evidence of persons employed by the company as to the proper division of passengers who boarded the company's cars on the lines crossing the municipal boundary lines or running on or near thereto between said cities and towns, the trustees found as a fact that the number of persons in said cities and towns using the service of the company at the time of said payment as provided in section 14 was properly divisible in the proportions shown in the following vote, which was duly adopted by the trustees:

"Whereas under the provisions of Chapter 159 of the Special Acts of the year Nineteen hundred and eighteen, the amount remaining in the Reserve Fund provided for in said Act was as of the last day of June, Nineteen hundred and nineteen, insufficient to meet the deficiency mentioned in section nine of said Act, and the Trustees of the Boston Elevated Railway Company on and prior to July 17, 1919, notified the Treasurer and Receiver General of the Commonwealth of Massachusetts as required by section eleven of said Act of the amount of said deficiency less the amount in the Reserve Fund applicable thereto, and the amount so notified was paid over to the Company on July 24, 1919

"On Motion, duly made and seconded, it was

"Voted: That the Trustees of the Boston Elevated Railway Company, appointed and acting under the provisions of Chapter 159 of the Special Acts of 1918, in accordance with the provisions of section fourteen of said Act, do hereby, from computations

made in their discretion for the purpose, determine and report to the Treasurer and Receiver General of the Commonwealth that the proportion which they are directed by said section to determine and report is as follows: . . . Chelsea, 1.0157% . . ." and for other cities and towns, various other percentages shown in detail in the return, making a total of one hundred per cent in all, and thereafter, on August 14, the trustees filed with the Treasurer and Receiver General a certificate stating the facts so determined.

"And the trustees found that the said computations are true in fact and are just and fair, and that the proportions as a fact represent the numbers of persons in said cities and towns, respectively, using the service at the time of said payment."

On July 17, 1919, the Treasurer and Receiver General, in anticipation of taxes to be levied in accordance with the provisions of Spec. St. 1918, c. 159, § 14, borrowed $4,000,000 to be paid November 20, 1919. St. 1919, c. 344, became effective July 22, 1919, and thereafter, on August 1, the Treasurer and Receiver General notified every city and town in the Commonwealth of its respective share of the State tax. On August 14 the Treasurer and Receiver General notified each city and town specified in the report of the respondent trustees, the proportionate amount of the deficit from the operation of the Boston Elevated Railway Company, determined in accordance with the proportions set forth in said report. On November 14 the treasurer of the city of Chelsea sent a check to the Treasurer and Receiver General for $100,377.63, balancing its account with the Commonwealth and protesting the payments therein included of $40,426.40 on account of its share of the said deficit, and $605.59 on account of its share in the interest charges incurred by the Commonwealth in borrowing the amount of said deficit above mentioned. On November 20, the loan of $4,000,000 was paid.

The case was heard before *De Courcy*, J., who denied the petition and, at the request of the parties, reported the case for the determination of the full court.

Material portions of Spec. St. 1918, c. 159, are quoted *ante,* 407–409.

St. 1919, c. 344, so far as material, is as follows:

"Section 1. Each city and town in this Commonwealth shall

be assessed and pay the sum with which it stands charged in the following schedule, that is to say: . . . Chelsea, $88,000.00."

"Section 2. The Treasurer of the Commonwealth shall forthwith send his warrant, according to the provisions of section thirty-four of Part I of chapter four hundred and ninety of the acts of the year nineteen hundred and nine, to the selectmen or assessors of each city and town taxed as aforesaid, requiring them respectively to assess the sum so charged, and to add the amount of such tax to the amount of city, town and county taxes to be assessed by them respectively on each city and town.

"Section 3. The Treasurer of the Commonwealth in his warrant shall require the said selectmen or assessors to pay or issue severally their warrant or warrants requiring the treasurers of their several cities and towns to pay to the Treasurer of the Commonwealth, on or before the fifteenth day of November in the year nineteen hundred and nineteen, the sums set against said cities and towns in the schedule aforesaid; and the selectmen or assessors, respectively, shall return a certificate of the names of the treasurers of their several cities and towns, with the sum which each may be required to collect, to the Treasurer of the Commonwealth at some time before the first day of September in the year nineteen hundred and nineteen.

"Section 4. If the amount due from any city or town, as provided in this act, is not paid to the Treasurer of the Commonwealth within the time specified, then the said Treasurer shall notify the treasurer of such delinquent city or town, who shall pay into the treasury of the Commonwealth, in addition to the tax, such further sum as would be equal to one per cent per month during the delinquency from and after the fifteenth day of November in the year nineteen hundred and nineteen; and if the same remains unpaid after the first day of December in the year nineteen hundred and nineteen, an information may be filed by the Treasurer of the Commonwealth in the Supreme Judicial Court, or before any justice thereof, against such delinquent city or town; and upon notice to such city or town, and a summary hearing thereon, a warrant of distress may issue against such city or town to enforce the payment of said taxes under such penalties as said court or the justice thereof before whom the hearing is had shall order. Nothing herein contained shall be construed to prevent the Treas-

urer and Receiver General from deducting at any time the whole or any part of said tax with the interest accrued thereon which shall remain unpaid from any moneys which may be due from the Commonwealth to such city or town."

*S. R. Cutler*, for the petitioner.

*A. Lincoln*, Assistant Attorney General, for the Treasurer and Receiver General.

*H. W. Barnum*, (*C. H. Waterman* with him,) for the trustees of the Boston Elevated Railway Company.

RUGG, C. J.   This is a petition for certiorari by the city of Chelsea against one who was Treasurer and Receiver General and those who are trustees appointed under Spec. St. 1918, c. 159, for the public operation of the Boston Elevated Railway Company system.

It is manifest that the petition cannot be maintained against the person named as Treasurer and Receiver General.   He has ceased to hold that office.   *Knights* v. *Treasurer & Receiver General*, 236 Mass. 336.   The duties imposed on the Treasurer and Receiver General under c. 159 are not in any particular judicial or *quasi* judicial, but are purely executive and administrative, and hence are not subject to examination by certiorari.   *Swan* v. *Justices of the Superior Court*, 222 Mass. 542, 544.   The Attorney General, however, raises no preliminary objections and the case is considered on its merits.

The petition assails the constitutionality of Spec. St. 1918, c. 159, in several particulars different from those considered in *Boston* v. *Treasurer & Receiver General, ante*, 403.   The provisions of the statute are there set forth in some detail and need not here be repeated.   That decision in all respects is adopted and affirmed so far as applicable to the issues here presented.   The copious authorities there cited need not be referred to again.

It there has been decided that the operation of the Boston Elevated Railway system through trustees appointed by the Governor is a public purpose, that moneys may be raised by taxation to aid in such public operation, and that the distribution of the burden thereof amongst the several cities and towns there described is within the constitutional power of the Legislature.

It is urged that c. 159 is unconstitutional because the power vested thereby in the trustees to determine how much and in

what proportion the cities and towns shall be obliged to contribute to make up the deficit arising from the operation of the railway system is contrary to art. 12 of the Declaration of Rights of the Constitution of Massachusetts and to arts. 5 and 14 of the Amendments to the Constitution of the United States, in that thereby the petitioner is deprived of its estate and property without due process of law.

Nothing need be said concerning said Amendment 5, because that is obligatory only upon Congress and federal courts and has no concern with State action. *Holden* v. *Hardy*, 169 U. S. 366, 382. *Minneapolis & St. Louis Railroad* v. *Bombolis*, 241 U. S. 211, 217.

There can be no constitutional objection to the raising of money by taxation in a constitutional manner for use in defraying expenses incurred for public purposes. It is only when an attempt is made by taxation to raise money for a private use, or to raise money for a public use by methods which are contrary to common right, that private property can be said to be taken without due process of law. It already having been decided that the purpose for which taxation is authorized by c. 159 is public, it is necessary only to consider the methods by which such taxation may be made under that chapter.

The contention of the petitioner is that c. 159 is unconstitutional because it contains no provision for notice and a hearing by the trustees before determining the amount of the deficiency and making demand upon the Treasurer and Receiver General for payment to meet that deficiency.

The statute makes no express provision for a public hearing to the cities and towns to be affected, either as to the rates of fare to be established, the charges to be made for depreciation, obsolescence and rehabilitation, or the determination of the proportion of the deficiency, which the Commonwealth is called upon to pay, among the cities and towns. Provision for such hearing is not essential to the validity of the statute. The argument of the petitioner appears to proceed on the theory that the present assessment is of the same kind as those levied by way of betterment for local improvement, and that all steps required for validly making such betterment assessment must be taken. That is a misconception. Its unsoundness is plain in several aspects.

It is apparent from the review of the provisions of the act and the examination of its scope and purpose in *Boston* v. *Treasurer & Receiver General, ante*, 403, that it makes no assessment for a local improvement. It establishes an enterprise purely public in its nature and not in any respect for the benefit of property in private ownership. The assessment authorized by § 14 is an apportionment of one of the burdens of general taxation. It is not the levy of a betterment assessment and has nothing in common with such an assessment. The case at bar, like *Kingman, petitioner*, 153 Mass. 566, deals "with a legislative distribution of public burdens among different political subdivisions of the Commonwealth, and the language in it must be construed in reference to the facts to which it relates. The right to apportion public burdens among cities, towns, and counties as it deems reasonable, in reference to benefits and to other considerations which are not capable of exact estimation in money, is within the power of the Legislature under the first part of art 4, c. 1, § 1, of the Constitution, and is not the same as the right to impose and levy taxes upon individuals. It is of the same nature as the right to create, change, or abolish cities, towns, or other political subdivisions of the Commonwealth." *Sears* v. *Board of Aldermen of Boston*, 173 Mass. 71, 78. *De las Casas, petitioner*, 180 Mass. 471. *Kingman, petitioner*, 170 Mass. 111, 119. *Scituate* v. *Weymouth*, 108 Mass. 128, 130. The numerous decisions respecting principles to be observed in the assessment of betterments upon private property are irrelevant to an assessment like this. *Mayor & Aldermen of Springfield, petitioners*, 234 Mass. 578, 583. There is no greater right to a notice and hearing in the ascertainment of such a tax than in the levying of the ordinary annual State tax.

There is no delegation of legislative power in the authorities vested in the trustees. The general principles to be observed are set forth in the statute. It is the carrying out of those principles with discretion, fidelity and wisdom that is vested in the trustees. However onerous that may be as an administrative burden, it does not partake of the nature of a legislative function. While such details might be included in the statute, no constitutional mandate is violated by leaving them to the decision of the trustees.

The petitioner is not a private property owner. So far as it may

hold title to property devoted to public uses, it is not subject to taxation. *Burr* v. *Boston,* 208 Mass. 537. The petitioner is not an ordinary taxpayer, whose property may be taken by an illegal assessment. The petition fails to set out any private property right in the petitioner in any way to be affected by the assessment. "A city is only a political subdivision of the State, made for the convenient administration of the government. It is an instrumentality, with powers more or less enlarged, according to the requirements of the public, and which may be increased or repealed at the will of the Legislature. In directing, therefore, a particular tax by such corporation . . . the Legislature only exercises a power through its subordinate agent." *New Orleans* v. *Clark,* 95 U. S. 644, 654. It is not open to doubt that the General Court may create a district and name the municipalities of which it shall be composed for the purpose of bearing some particular burden of taxation, which it determines to have relation thereto. In so doing it is not compelled to give notice to the parties resident within the territory or to permit a hearing before itself, one of its committees, or any other tribunal, as to the questions whether property ought to be within the taxing district, the proportion of taxation to be levied upon any city or town within the district, and the extent of benefit conferred upon each of them. *Norwich* v. *County Commissioners,* 13 Pick. 60. *Kingman, petitioner,* 153 Mass. 566. *Prince* v. *Crocker,* 166 Mass. 347, 359. *Williams* v. *Eggleston,* 170 U. S. 304, 311. *Carson* v. *Sewerage Commissioners of Brockton,* 175 Mass. 242, 244, affirmed in 182 U. S. 398. *Kingman, petitioner,* 170 Mass. 111, 119. *De las Casas, petitioner,* 180 Mass. 471, 472. *Opinion of the Justices,* 234 Mass. 612.

A municipality has only those powers which expressly or by necessary implication are conferred upon it by statute. *Higginson* v. *Treasurer & School House Commissioners of Boston,* 212 Mass. 583. The right to institute litigation for and to represent individual taxpayers in such a proceeding as this is not among such powers.

Every taxpayer has the ordinary remedies open to him under the general law as to taxation for testing the validity of the assessment of which complaint here is made. The constitutional sufficiency of those provisions under the Constitution of Massachusetts was upheld in *Harrington* v. *Glidden,* 179 Mass. 436, and

under the Constitution of the United States in *Glidden* v. *Harrington,* 189 U. S. 255, *Central of Georgia Railway* v. *Wright,* 207 U. S. 127, *Turner* v. *Wade,* 254 U. S. 64. Questions of that sort of course are not and cannot be raised in this proceeding.

The provisions of § 14 violate no constitutional provision in providing for the assessment or in ascertaining its apportionment. In this respect the case at bar is within the authority of numerous decisions. *Hingham & Quincy Bridge & Turnpike Corp.* v. *County of Norfolk,* 6 Allen, 353. *Agawam* v. *Hampden,* 130 Mass. 528. *Opinion of the Justices,* 234 Mass. 612. *Mayor & Aldermen of Springfield, petitioners,* 234 Mass. 578. *Boston* v. *Treasurer & Receiver General, ante,* 403.

The return of the trustees must be taken to be true in its statement of facts. *Weld* v. *Gas & Electric Light Commissioners,* 197 Mass. 556, 559. It is plain from that return that the trustees gave adequate hearing to the petitioner. The method followed by the trustees in ascertaining the proportion of persons in the several cities and towns using the service of the railway company as the basis for the assessment and the computations made therefor do not contravene any provisions of the Constitution. Every rational presumption is made in favor of such a decision by the trustees. Actual count of persons boarding cars of the railway company in the several municipalities during periods fairly typical cannot be said to be unjust. No better method has been suggested in argument.

The averments of the petition that the trustees "proceeded unjustly, arbitrarily, and illegally" are of slight consequence and add nothing to the facts alleged. The facts stated in the return of the trustees demonstrate that they proceeded with deliberation, sagacity, in the spirit of justice and according to law.

Moreover, there is provision for resort to the courts, even by the petitioner, so far as its rights are affected. It is required by § 14 that the amount assessed to each city and town shall be "added to the State tax next thereafter assessed." It is provided by St. 1919, c. 344, § 4, and a similar provision is found in recent statutes assessing the State tax, that in case of refusal of a city or town to pay the State tax, information may be filed by the Treasurer and Receiver General in the Supreme Judicial Court to enforce payment. Thus there might be a hearing in court as

to the validity of the tax in any respect whereby the petitioner is affected and is entitled to be heard.

The assessment was levied in accordance with § 14. It there is provided that "In case the Commonwealth shall be called upon to pay to the trustees . . . any amount under the provisions of sections eleven and thirteen, such amount . . . shall be assessed . . . by an addition to the State tax next thereafter assessed." It was enough that the demand was made before the State tax statute of 1919 was enacted, although the payment was not made until after its enactment, to warrant addition to the State tax of that year.

It follows that no guaranty of the State or Federal Constitutions has been violated by the said c. 159 in any of the particulars set forth in the petition, or by the conduct of the trustees and the Treasurer and Receiver General thereunder.

*Petition dismissed.*