COUNTY OF ESSEX *vs.* CITY OF NEWBURYPORT.

Essex.    November 16, 1925. — January 5, 1926.

Present: RUGG, C.J., BRALEY, PIERCE, WAIT, & SANDERSON, JJ.

*Contract*, What constitutes. *Essex County Tuberculosis Hospital District. County. Constitutional Law*, Public health, Taxation, Political subdivisions, Due process of law.

At the hearing of an action of contract against a city, where as a part of its defence the city relied upon a certain contract with a third party and an issue was, whether such contract had been entered into, it is proper to rule as a matter of law that the evidence was not sufficient to establish the making of such contract if there was evidence only that the city council adopted an order authorizing the mayor to make such a contract with specified terms and the mayor and the city auditor testified that the mayor signed a contract but could not remember its terms, a copy of it was not produced and it does not appear that the contract was in the city files.

Spec. St. 1917, c. 107, exempting the city of Newburyport from liability to assessment for the construction of a hospital erected under St. 1916, c. 286, did not constitute a contract between the defendant and the Commonwealth, and it was subject to change, modification or repeal like any other statute.

There is nothing arbitrary, despotic or constituting a flagrant misuse of legislative power in St. 1924, c. 443, which established the Essex county tuberculosis hospital district, repealed the provisions of St. 1916, c. 286, § 4, and of Spec. St. 1917, c. 107, exempting certain cities from liability to contribute to the cost of the erection and maintenance of the hospital, and assessed such cost upon all the cities and towns of the county in accordance with their valuations; and it is constitutional.

In an action by the county of Essex against the city of Newburyport to enforce liability under St. 1924, c. 443, the defendant, none of whose property was taken or was proposed to be taken by the statute, was not

in a position to raise any question under the Fourteenth Amendment to the Constitution of the United States. If the question were open, *it seems* that the statute does not violate that provision of the Federal Constitution.

CONTRACT for $22,288.54, alleged to have been due from the defendant under the provisions of St. 1924, c. 443, as its share of the total cost of the tuberculosis hospital of Essex County. Writ dated January 20, 1925.

In the Superior Court, the action was heard by *Quinn,* J., without a jury. Material facts agreed upon and found by the judge are described in the opinion. The judge found for the plaintiff in the sum of $22,934.90. The defendant alleged exceptions.

*R. G. Dodge,* (*J. M. Raymond* with him,) for the defendant.
*S. Parsons,* (*C. F. Hathaway* with him,) for the plaintiff.

RUGG, C.J. This is an action of contract to recover the amount required to be paid by the defendant to the plaintiff as specified by St. 1924, c. 443, § 3, which amount is that levied by an assessment by the Legislature itself. It arose in this way: By St. 1916, c. 286, now G. L. c. 111, §§ 78–91, the county of Essex, in common with many other counties, was required to provide adequate hospital care for all persons suffering from consumption, in need of hospital treatment, residing in cities and towns of less than fifty thousand inhabitants, with alternative provisions not here material. The expense of any hospital built to afford this care was to be assessed upon such cities and towns. Pursuant to that statute, the county of Essex built at Middleton an elaborate hospital for tuberculosis patients, at an expense of $1,569,287.01. By Spec. St. 1917, c. 107, the defendant, although having less than fifty thousand inhabitants, was exempted from liability to assessment for such hospital. That exemption was enacted on petition of the mayor and other citizens of Newburyport setting out that a ward for persons affected with tuberculosis was being constructed in connection with the Anna Jaques Hospital, a charitable institution of that city, which would accommodate residents of Newburyport needing such treatment. Such ward was in fact constructed and residents of Newburyport needing

such treatment have there received it, and the defendant has paid therefor considerable sums of money each year. The cities of Lynn, Lawrence, Haverhill and Salem then had, and at all times since have had, adequate hospital provision for consumptives within the meaning of St. 1916, c. 286, § 3. They were by § 4 of that statute exempted from all liability to contribute to the county hospital. The cost of building the county hospital, except a comparatively small amount not here material, has been assessed upon the cities and towns liable therefor under St. 1916, c. 286, after the enactment of Spec. St. 1917, c. 107, and has been paid by them.

By St. 1924, c. 443, it was provided in § 1, that all the cities and towns of Essex County should constitute the Essex County tuberculosis hospital district and be subject to all the provisions of the general law as to care of persons suffering from tuberculosis. The cost of maintenance, operation and repair of the county tuberculosis hospital was to be assessed upon all the cities and towns of the county in accordance with their valuations. The exemption theretofore enjoyed by Lynn, Lawrence, Haverhill, Salem and Newburyport was expressly repealed by § 2. The precise assessment to be levied upon those five cities was specified in § 3. The option was offered to each of these cities by § 4, either to transfer title to property owned and used by it for tuberculosis purposes to the district at a valuation to be ascertained as there provided, or to retain such property for sale or use for other municipal purposes. It was provided by § 6 that the assessments levied upon the five cities by § 3 should be distributed among the cities and towns theretofore constituting the district in the same proportion as such cities and towns were originally required to contribute to the cost of the county or district hospital, to be applied by them in payment of debts incurred for the hospital or of assessment levied on account thereof. The provisions of §§ 5, 7, and 8 have no relevancy to any question argued. The result of this statute is that all the cities and towns of Essex County now constitute a single district for the treatment of tuberculosis, and all their inhabitants so far as needing hospital treatment under the requirements of law may receive it at

the district hospital; municipal hospitals for that purpose may be discontinued.

The effect of St. 1924, c. 443, is to consolidate all cities and towns in the county of Essex into one district, and to equalize the cost of the district hospital so that when the assessments made by § 3 are paid and distributed as provided by § 6, each city and town will have borne its share of the cost in such proportion as the Legislature has adjudged by its statutes to be reasonable.

The case was heard by a judge of the Superior Court upon two issues: (1) Whether a written contract had been entered into between the defendant and the Anna Jaques Hospital relative to the care of tuberculosis patients; and (2) Whether St. 1924, c. 443, was constitutional so far as it required the defendant to pay a part of the cost of the county hospital. Evidence was submitted on the first issue and important facts were submitted by an agreed statement.

1. The judge rightly ruled as matter of law that the evidence was not sufficient to establish a valid binding contract between the defendant and the Anna Jaques Hospital. The city council of the defendant in 1916 adopted an order authorizing the mayor to make a contract in the name of the city with the Anna Jaques Hospital upon the completion of a suitable ward for patients suffering from tuberculosis "to place in said hospital the city's patients suffering from tuberculosis, the expense to the city for the care of such patients not to exceed by more than $5.00 per week per patient, the subsidy paid to the city for each patient by the Commonwealth under Chapter 597 of the Acts of 1911 and its amendments." The city auditor of the defendant testified that an agreement, consisting of seven or eight pages, between the hospital and the city was signed by the mayor, but he saw no other signature on it. He could not tell with certainty the price to be paid for patients, though his impression was that it was $12 per week. No contract is on file either with the city or the hospital. The mayor of 1916 testified that he signed a contract and that a Mr. Moseley signed it but he could not remember the terms of the contract or the price to be paid for the patients or anything further about it

except that it was handed to the city clerk. Another witness had a conversation with Mr. Moseley, since deceased, but he never saw the contract and could not give its terms. No copy of the contract was produced. It is manifest that this evidence was insufficient to establish a valid and binding contract between the defendant and the hospital. There was no evidence that the paper signed by the mayor conformed to the order of the city council, or that its execution was authorized by the trustees of the hospital. There was nothing to show its terms with any certainty.

2. The constitutionality of St. 1924, c. 443, § 3, is assailed. The object of that statute in general is the preservation of the public health. It is designed to aid in the prevention and cure of a disease now commonly accounted one of the scourges of mankind. No argument is required to demonstrate that the establishment of the hospital for the specified cities and towns of Essex County under St. 1916, c. 286, was a public purpose for the construction and maintenance of which taxes may be levied. The hospital stands on as firm footing in this respect as do schools, roads, bridges, and other confessedly governmental functions. The Legislature is clothed with broad powers and heavy responsibilities as to the distribution of the burdens of taxation for the support of such instrumentalities for the general welfare. Ordinarily the finality of a legislative apportionment of taxation for support of these public institutions among several cities and towns would not be questioned. The power of the General Court to create and change, consolidate and divide districts for taxation purposes is plenary. Doubtless it would transcend constitutional bounds to tax the people of one territorial subdivision of the Commonwealth for the benefit of the people of another remote territorial district. But it is not essential to a valid scheme of taxation that all the people benefit from it in precisely the same degree. No tax system has been devised whereby a perfect equalization of its burdens or an exact distribution of the benefits of expenditure of money raised by taxation can be accomplished. The Legislature in its wisdom may change county or town lines and provide for the sharing and adjustment of their respec-

tive assets and liabilities.   Instead of doing this, the Legislature may apportion public burdens in such manner as will tend to secure fairness and equality.   And subsequently such plan of distribution of burdens may be changed.   The several towns, cities and counties of the Commonwealth are public agencies established by the Legislature for the convenient administration of government.   They are subject in large measure to legislative control.   The Legislature may even terminate the existence of a particular municipality and establish different means for the government of the people and territory formerly comprised within it.   There are instances where counties and municipalities have been compelled or authorized to contribute for improvements beyond their own borders.   The municipal subdivisions of the Commonwealth have not the same right to judicial trial and decision respecting obligations imposed on them for the support of strictly public burdens as have private corporations and other persons.   Their powers and duties are not created or regulated by contract but by statutes which are subject to change from time to time as may be determined by the Legislature.   The cost of public improvements undertaken by any agency of government may be apportioned not only with reference to all the benefits to the respective cities and towns affected but also with reference to population, physical characteristics and ability to bear the burden.   Assessments to pay the cost of public improvements need not be apportioned among the several cities and towns of a district according to the benefits received by them.   Legislative power is not exhausted by a single exercise but may be put forth at any time for the promotion of the general welfare.

The original unit established in the northeastern part of the Commonwealth for the administration of justice, the support of jails and houses of correction, and the registration of deeds and the transaction of other kindred public affairs was the county of Essex.   When the Legislature came to deal with the problem of proper provision for patients suffering from tuberculosis in Essex County in 1916, four cities were omitted from the district required to contribute for the cost of the hospital.   It seems plain that at that time the whole

county might have been made a unit for that purpose by the Legislature and those four cities as well as all other cities and towns of the county required to contribute to that cost. The omitted cities did not have the same right to share in the benefits of the hospital as did those within the district. St. 1916, c. 286, § 12, now G. L. c. 111, § 88. By Spec. St. 1917, c. 107, in addition to the other four cities, the defendant was exempted from the district. That that statute did not constitute a contract between the defendant and the Commonwealth is settled by *Boston, petitioner,* 221 Mass. 468; *Chelsea* v. *Boston,* 245 U. S. 626. There is no sound constitutional ground for holding that the Legislature could not do in 1924 with reference to the hospital district in Essex County that which it plainly had the right to do in 1916. Spec. St. 1917, c. 107, whereby the defendant was exempted from the provisions of St. 1916, was subject to change, modification, or repeal like any other statute. By St. 1924, c. 443, the defendant was reincorporated into the hospital district with whatever privileges and rights flow therefrom.

We are unable to perceive anything arbitrary, despotic, or constituting a flagrant misuse of legislative power. Such characteristics would render legislation contrary to constitutional guaranties. But they do not exist in St. 1924, c. 443.

The case at bar is governed by the principle of numerous decisions: *Scituate* v. *Weymouth,* 108 Mass. 128. *Agawam* v. *Hampden,* 130 Mass. 528. *Kingman, petitioner,* 153 Mass. 566, 573, 580. *Kingman, petitioner,* 170 Mass. 111. *Boston, petitioner,* 221 Mass. 468. *Duffy* v. *Treasurer & Receiver General,* 234 Mass. 42. *Opinion of Justices,* 234 Mass. 612. *Boston* v. *Treasurer & Receiver General,* 237 Mass. 403. *Worcester* v. *Worcester Consolidated Street Railway,* 196 U. S. 539. *Philip Wagner, Inc.* v. *Baltimore,* 239 U. S. 207, 216. *Trenton* v. *New Jersey,* 262 U. S. 182. The amplitude and clearness of discussion in those decisions render further consideration at this time unnecessary.

The case at bar is distinguishable from *Hampshire* v. *Franklin,* 16 Mass. 76, of which it was said by Chief Justice Shaw in *Norwich* v. *County Commissioners,* 13 Pick. 60,

"There the right to the money in the treasury, had actually become vested in the county of Hampshire; and the effect of the legislative act was, in so many terms, to provide that a portion of the money of one county, actually in its treasury, should be paid over to another, in obvious violation of vested rights." No discussion is needed to show that the case at bar is different. The case at bar is distinguishable also from *Matter of Assessment for Prospect Park Extension,* 60 N. Y. 398. That decision rested upon two grounds: one was that the statute in its form of enactment violated the constitution and hence was invalid; the other was that the statute, if given effect according to its terms, undertook to authorize the assessment of betterments upon privately owned lands for a park improvement, chiefly located in another municipality and already completed and paid for, and on account of which betterment assessments had been levied and collected under earlier statutes. In this connection see *Boston, petitioner,* 221 Mass. 468, 475. It is not necessary to review and distinguish cases from other jurisdictions upon which the defendant relies, because the principles upon which this judgment rests are thoroughly established by our own decisions.

The defendant is not in a position to raise any question under the Fourteenth Amendment to the Constitution of the United States. None of its private property is taken or proposed to be taken by the statute. The defendant is simply required to collect by taxation and to pay public money for a public use. *Chelsea* v. *Treasurer & Receiver General,* 237 Mass. 422. The defendant is merely employed by the Legislature as an instrumentality of government to pay public money presumably raised directly or ultimately by taxation for a public use. Even if it be assumed, however, that that question is open to the defendant, there is no substance in it. The reasons already stated and the decisions of the Supreme Court of the United States hitherto cited seem to us to demonstrate that no taking of property without due process of law is made under this statute.

*Judgment for the plaintiff on the finding.*